Ex Parte W. H. King.

1. The statutory requirements as to service of citations in error are not applicable when an *ex parte* order of a district judge, made of his own motion, and removing a district clerk from office, is brought to this court by writ of error. In such a case the writ of error was necessary to invoke the jurisdiction and the supervisory powers of the Supreme Court; but no service of citation in error upon the district attorney was necessary.

2. Though the Constitution of 1869 confers power upon the district judges to remove sheriffs and district clerks from office, for cause spread upon the minutes of the court, yet these provisions do not invest a district judge with an arbitrary power to remove such officers for any cause which he may see proper to spread upon the minutes of his court. The officer cannot be rightfully removed unless he is guilty of some breach of the trust implied by law in the tenure of his office. Only such incompetency, nonfeasance or misfeasance, corruption or partiality in office, as would amount to a forfeiture of the right to enjoy it, can rightfully call into exercise the judge's power to remove.

3. Since the adoption of the common law, in the year 1840, the Constitutions of Texas have been framed with reference to it, and by its principles and modes of procedure their interpretation has been and must be controlled; and hence, when the present Constitution clothed the district judges with the power to remove sheriffs and district clerks, it was intended that such power should be exercised in obedience to the rules of the common law. The proper mode of procedure, therefore, is to enter a rule *nisi*, requiring the officer to show cause why he should not be removed from his office. This rule *nisi* may be entered by the judge of his own motion, or upon the relation

42—XXXV

of another; but in every case the cause of removal must be set forth in plain and intelligible words, and with issuable allegations affording the inculpated officer an opportunity to contest and disprove them. General allegations of incompetency, or wholesale charges of any kind, will not suffice.

4. On reversing a district judge's order removing from office a district clerk, this court reinstates the clerk, who, in the present case, was afforded no opportunity of defending himself in the court below.

ERROR from Anderson. Tried below before the Hon. John G. Scott.

The case is fully disclosed in the opinion of the court.

*Thos. J. Jennings, and Thos. Smith*, for the plaintiff in error.—Article 1, Section 16, of our State Constitution, says: "No citizen of this State shall be deprived of life, liberty, property, privileges, outlawed, exiled, or in any manner disfranchised, except by due course of the law of the land." Section 23 of the same article says that "every thing in this bill of rights is excepted out of the general powers of government, and shall forever remain inviolable."

The first section of the first article of our State Constitution declares the Constitution of the United States, and the laws and treaties made in pursuance thereof, to be the supreme law of the land, etc.

In this connection, the attention of this honorable court is invited to the latter clause of the fifth amendment to the Constitution of the United States (Oldham & White's Digest, p. 7), referring to rights of persons, where it is declared that no person shall "be deprived of life, liberty, or property, without due process of law," etc.

To show that the plaintiff in error was deprived of his property and privileges without "due course of law" (keeping in mind the fact that he was dismissed without notice, without a hearing, and without any

charges made against him), we invite the attention of this court to the case of Taylor v. Porter, 4 Hill, 146, in which Mr. Justice Bronson, of the Supreme Court of New York, referring to and expounding a similar clause in the Constitution of that State, says: "The meaning of the section is, that no member of the State shall be disfranchised or deprived of any of his rights or privileges, unless the matter shall be adjudged against him, upon a trial had according to the course of the common law."

Judge Story, in his Commentaries on the Constitution, section 1789, referring to the clause quoted by us from the fifth amendment, *supra*, says : "This clause, in effect, affirms the right of trial, according to the process and proceeding of the common law."

In the case of Greene v. Briggs, 1 Curtis R., 325, Mr. Justice Curtis, of the Supreme Court of the United States, referring to the words, "due course of the law of the land," says : "The exposition of these words, as they stand in Magna Charta, as well as in the American Constitution, has been that they require due process of law, and in this is necessarily implied and included the right to answer and contest the charge, and the consequent right to be discharged from it, unless it is proved." (*Vide* Hoke v. Henderson, 4 Dev., 15; The People v. Berberrick, 11 Howard's Practice R., 322 ; 2 Kernan, 209 ; 3 Kernan, 378—all reasserting the doctrine so explicitly declared by Judges Story, Curtis and Bronson, in the cases above cited.)

The question now arises, does the ninth section, Article 5, of our State Constitution, authorize the district judge to remove the clerk by simply spreading an order to that effect upon the minutes of the district court, reciting therein statements, the truth of which the clerk has had no opportunity whatever of contesting, of being

notified of the contemplated action of the court, and
having "his day in court," and being heard by himself
or his counsel, in resisting the summary action of the
district judge?

We respectfully submit that an interpretation of Sec-
tion 9, Article 5, of our State Constitution, which would
give to the district judge the right to thus summarily
remove the clerk, without notice, without trial, and
without charges, according to the "due process of the
law of the land," would put that section in conflict with
the fifth amendment to the Constitution of the United
States, which, Judge Story says (Story Const., § 1789),
"affirms the right of trial, according to the process and
proceedings of the common law." (*Vide* also 1 Cur-
tis, 325; 4 Hill, 146, *supra*.)

The authority conferred upon the district judge by
the ninth section, Article 5, of our State Constitution,
must be exercised according to "due process of the law
of the land," and that authority exists in subordination
to the Constitution of the United States, as expounded
by Judges Story and Curtis in the cases above cited—
the latter instrument being expressly declared and ac-
knowledged by our State Constitution, to be "the su-
preme law of the land."

The attention of this court is now specially called to
the case of *Ex Parte* Heyfron, 7 Howard's Mississippi
Reports, 127, which, we think, is directly in point, and
decisive of this case in favor of the plaintiff in error.
In that case Heyfron, an attorney of the court, was
stricken from the rolls by the court, on charges of em-
bezzlement, but without notice, or any opportunity
being afforded him of appearing, either in person or by
counsel, and defending himself. The case at bar is a
stronger one in favor of plaintiff in error (King) than
the case of Heyfron, in this, that in Heyfron's case

there were charges preferred; in this case there were none. Neither had an opportunity, however, of being heard, nor even notice of the proceeding. The Supreme Court of Mississippi, in Heyfron's case, say, "It is a cardinal principle in the administration of justice, that no man can be condemned, or divested of his rights, until he has had the opportunity of being heard. He must, either by service of process, publishing, notice, or in some other way, be brought into court; and if judgment is rendered against him before this is done, the proceedings will be as utterly void as though the court had undertaken to act where the subject matter was not within its cognizance."

It will hardly be insisted, that because King was clerk of the court in which the judgment complained of was rendered, he therefore had notice of the action of the court. If it should be so insisted, however, we respectfully ask the attention of this court to the case of Jones v. Kenny, Hardin's Kentucky Reports, 96, in which the court say, "It seems that a court does not possess the power to render judgment against a person simply from the fact that he was in court, unless he was brought in by legal process."

In the case at bar, there was no notice, no process, no calling upon King to appear in court and answer to any charge whatever, but simply a peremptory order made by the judge, and entered upon the minutes of the court, declaring W. H. King unfit for the office, and sweeping him from official existence as suddenly, and doubtless as much to his amazement, as if stricken by the lightning of heaven.

*Wm. Alexander, Attorney General, contra,* moved to dismiss, because there had been no legal service of citation in error upon the district attorney.

*Long & Oatman*, for the plaintiff in error, resisted the motion of the Attorney General.

EVANS, P. J.—This case comes before this court upon a writ of error from the District Court of Anderson county.

It stands upon the docket Wm. H. King, Plaintiff in Error, v. The State of Texas.

It appears from the record that on the tenth of January, 1871, the District Court of Anderson county caused a judgment or order to be entered upon the minutes of the court in the following words:

*In the matter of W. H. King, district clerk of Anderson county.*—It appears to the satisfaction of the court that Wm. H. King, clerk of the district court of Anderson county, is entirely incompetent to the discharge of the duties of said office, and that his habits of life are dissipated to such a degree as to still further unfit him for said office.

"Now, therefore, by virtue of the authority vested in the presiding judge of this court by Article 5, Section 9, of the Constitution of the State of Texas, it is ordered, adjudged and decreed, that for the causes hereinbefore set forth, the said Wm. H. King be and he is hereby removed from office as clerk of the District Court of Anderson county; and that a certified copy of the entry of this order be transmitted to His Excellency Edmund J. Davis, Governor of Texas, as information to the Executive that said office of district clerk of Anderson county is vacant, to the end that such vacancy may be filled by appointment in pursuance of the provisions of the law. This order to be enforced *instanter*."

The Attorney General has moved to dismiss this cause for want of service of the writ of error on the

district attorney ; to which motion the counsel of King replies that this proceeding in this court is *ex parte*, and that service of the writ of error on the district attorney is not necessary ; and the counsel suggests, that if the service be quashed, the case should nevertheless stand on the docket, to be heard and determined *ex parte;* and in support of this suggestion we are referred to the case *Ex Parte* Crutchfield, 3 Yerger, 336, and *Ex Parte* Williams, 4 Yerger, 580, and other cases in which appeals from judgments disbarring attorneys and removing guardians, were prosecuted *ex parte.*

We have carefully considered the motion of the Attorney General, and are of the opinion that the statutory requirements, as to the service of the citation in error, are not applicable to this case.

The proceedings in the court below were not in the name of the State, but were simply an order of the court removing the clerk for incompetency and unfitness for the office of clerk, because of habits of dissipation.   So far as the record discloses, the district judge acted upon his own knowledge, and of his own motion.   There was no judgment for costs, and it was proper there should be none.   The clerk, against whom the order removing him from office was made, had no redress except in this court.   The proceeding in error was therefore necessary to invoke the jurisdiction and the protecting power of this court, but the service of the writ upon the district attorney was not necessary.

We therefore overrule the motion of the Attorney General to dismiss the case, and proceed to consider it on its merits.

Article 5, Section 9, of the Constitution, which is referred to in the order of the court as the source of the power to remove the clerk from his office, so far as relates to this case, is in the following words :

"A clerk of the district court for each county shall be elected by the qualified electors in each county, who shall hold his office for four years, subject to removal by the judges of said court, for cause spread upon the minutes of the court."

There is a similar provision in section eighteen of the same article, in relation to sheriffs.

The authors of the Constitution no doubt intended by these provisions to secure the highest degree of efficiency on the part of clerks and sheriffs, but it cannot be supposed that it was intended to clothe the district judge with an arbitrary power to remove an executive officer for any cause that the judge might think proper to spread upon his minutes.

Experience had shown that in some instances incompetent clerks and sheriffs were elected; in other cases, persons chosen to fill these offices became incompetent after their election. It was intended to provide a more certain and speedy remedy against the evils of incompetency and malfeasance on the part of these officers than is afforded by the tardy and uncertain process of indictment; but it could not have been intended to make a mockery of election by the people, by giving to the district judge the power capriciously to deprive an officer chosen by the people of his office.

The language of the Constitution is to be understood with some limitation; we must therefore endeavor to ascertain its true meaning.

Since the introduction of the common law into this State, in the year 1840, our constitutions have been framed with reference to it, and they have been and must continue to be interpreted in the light of its principles and modes of procedure. Summary convictions without trial by jury were unknown to the common law.

It was only by virtue of particular statutes that power was given to justices of the peace in England to try offenders summarily, without a trial by jury, and the superior courts always exercised a rigid supervision over the inferior tribunals in all such cases.

Thus it is said that "where a special power is given to a justice of the peace by act of Parliament to convict an offender in a summary way, without a trial by jury, it must appear that he had strictly pursued that power, otherwise the common law will break in upon him and level all his proceedings.

"Therefore, where a trial by jury is dispensed withal, yet he must proceed, nevertheless, according to the course of the common law in trials by juries, and consider himself only as constituted in the place of both judge and jury. Therefore, there must be an information or charge against a person ; then he must be summoned, or have notice of such charge, and have the opportunity of making a defense, and the evidence against him must be such that the common law approves of, unless the statute specially directeth otherwise. Then, if the person is found guilty, there must be a conviction, judgment and execution, all according to the course of the common law, directed and influenced by the special authority given by the statute ; and in the conclusion, there must be a record of the whole proceedings, wherein the justice must set forth the particular matter and circumstances, so as if he shall be called to account for the same by a superior court, it may appear that he hath conformed to the law, and not exceeded the bounds prescribed to his jurisdiction." (1 Burns's Justice, 364.)

Again, it is said : "It is certain that very rigid rules of construction in regard to these summary proceedings have prevailed in courts of justice. It has been

held that as this mode of judicature has been introduced in derogation of the common law, and operates to the exclusion of trial by jury, the superior courts have rigidly confined its authority to the strict letter of the respective statutes by which it was established; and in revising its decisions they require that rules similar to those adopted by the common law in criminal prosecutions, and founded in natural justice, should appear to have been observed." (McKinney's Justice, Vol. 1, p. 353; see Rex v. Little, 1 Burrows, 613, and Rex v. Cordere, 4 Burrows, 2279.)

The rules adopted by the superior courts of England in reference to these summary convictions were a part of the common law when it was introduced into this State; and we conclude that when the Constitution of the State clothed the district judge with the power summarily to deprive an officer of an office to which he had been elected by the people, it was intended that in the exercise of that power the judge should proceed in obedience to the rules of the common law. The proper mode of procedure would be to enter a rule *nisi*, requiring the officer to show cause why he should not be removed from his office; and this rule *nisi* may be entered by the judge, of his own motion, or upon the relation of another; but the rule should in every case set forth in plain and intelligible words the cause for which it is proposed to exercise the power of removal. The cause must be made up of the issuable facts, so as to give the accused an opportunity to contest and disprove them. General allegations of incompetency, or wholesale charges of any kind, will not be enough.

Another and a vital consideration remains. We have said that it cannot be supposed that the framers of the Constitution intended to clothe the district judge with the power arbitrarily or capriciously to remove from

office an officer elected by the people.    Yet the judge
has the power to remove.   What cause, then, authorizes
the exercise of the power ?

The answer seems to us to be plain.   The election to
the office and the acceptance of it imposes upon the
officer the obligation to perform all its duties, and he
has the corresponding right to receive the fees and enjoy
the emoluments allowed and secured by the law.   He
cannot rightfully be deprived of these, unless he is
guilty of a breach of trust implied by law in the tenure
of the office.   It is not enough that the district judge
may think that the officer has done something for which
he ought to be removed.   The fact must be so.   There
must be such incompetency, or such non-feasance, or
malfeasance, or corruption, or partiality in his office, as
will amount to a forfeiture of the right to enjoy it.
Such cause only can rightfully call into exercise the
power to remove.

It is quite clear from the record in this case, that the
court did not extend to the clerk the right of defending
himself against the charges preferred against him.
Nothing in the record discloses any notice to the clerk.
It is not shown that any opportunity was afforded him
to answer, or to question the sufficiency in law, or the
truth in fact of the charges made against him.

Whereupon we are of opinion that Wm. H. King
was not legally removed from the office of clerk of the
district court of Anderson county.   The judgment of
the district court is therefore reversed and the cause
remanded, and the appellant shall be reinstated in his
office until further ordered.

ORDERED ACCORDINGLY.