BINGHAM TRIGG v. THE STATE OF TEXAS.

1. HABITUAL DRUNKENNESS.—In a proceeding under section 24 of article 5 of the Constitution of 1876, to remove an officer for "habitual drunkenness," it is sufficient to allege that such officer was guilty of habitual drunkenness.

2. SAME.—Habitual drunkenness is a distinct fact within itself : a condition of body and mind produced by the excessive use of intoxicating liquors, confirmed by habit.

3. SAME.—It is not necessary to its definition that specific instances of drunkenness be alleged, or the effect upon the mind or body produced thereby.

4. SAME.—Acts of drunkenness between the election and qualification of such officer should not have been allowed in the pleading or in evidence.

5. SAME—PLEADING.—Allegations charging, with time and place, four acts of drunkenness in as many months, would not be sufficient, from which the charge of habitual drunkenness could be inferred as a necessary or legal consequence.

6. OFFICIAL MISCONDUCT IN A COUNTY ATTORNEY.—Such charge against a county attorney was sufficiently made by an allegation that, in assuming to prosecute a party accused of an offense, he had intentionally managed the prosecution so as to procure his acquittal, when he knew the accused was guilty of the offense with which he was charged.

7. CONSTITUTIONAL LAW.—Section 24 of article 5 of the Constitution of 1876, was made in aid of, and to keep in order, the political organization of the State government, by a summary mode of removing county officers, and not until lately adopted in reference to them.

8. SAME.—It declares "official misconduct, habitual drunkenness," &c., to be a disqualification from holding such offices, and points out a summary mode of determining that fact, and of executing the declared consequence of removal by the district judge, "upon the cause therefor being set forth in writing, and the finding its truth by a jury."

9. SAME.—Officers named in said section 24 of article 5 take their offices subject to the limitation, as to duration of office, expressed therein : cause of removal being set forth, and the mode of ascertainment being prescribed.

10. SAME—JUDICIAL INTERPRETATION.—The Constitution of 1876, in section 24 of article 5, in adopting the provision of former Constitutions for removals by the district judge, and extending the same to other officers, is considered to have adopted the judicial construction put upon the powers of the district judge, and may be regarded

as an authoritative adoption of the summary remedy as it has been previously construed and acted on by the Supreme Court in Gordon *v.* The State, 43 Tex., 338, and cases there discussed.

11. SAME.—Legislative action was not necessary to render operative the right to remove county attorneys, &c., by the district judge, upon the causes stated and in the mode prescribed.

12. PLEADING.—It was proper that such proceedings be in the name of the State, and may be commenced by a relator.

13. PROCEDURE IN REMOVALS.—The district judge is made by the Constitution responsible for the inception of proceedings for removal, and he should see to it that such charges distinctly allege a sufficient ground, and he should be satisfied of the truth of the charge before allowing it to be made.

14. SAME.—Suggestions as to procedure in such prosecutions.

15. APPEAL LIES IN SUCH CASES.—From a judgment removing from office such officers, by the district judge, an appeal lies to the Supreme Court.

16. CHARGE OF COURT DEFINING HABITUAL DRUNKENNESS.—Held, that habitual drunkenness was not sufficiently defined by the following charge : " The word ' habitual ' means the same in import as formed, or acquired by habit, or customary, or usual, or common, by frequent practice or use. It means more than the word sometimes ; nor does it imply reduced to actual imbecility."

17. FACT CASE.—See facts held insufficient to establish the charge of habitual drunkenness.

18. OFFICIAL MISCONDUCT.—See discussion of facts as applying to such charge, and facts held insufficient to support it.

19. PROCEEDINGS IN REMOVAL FROM OFFICE.—The court comments on a mode of stating and submitting charges of official misconduct in which the practice of courts-martial was in part adopted, charges being made, with specifications under each. The proceedings criticised and condemned.

APPEAL from Travis. Tried below before the Hon. E. B. Turner.

This was a proceeding to remove B. Trigg from the office of county attorney of Travis county.

The pleadings and testimony will be sufficiently understood by the opinion, in connection with the briefs given.

The court charged the jury as follows :

" This proceeding was instituted by filing charges against the defendant, charging him with official misconduct and

habitual drunkenness. There are other matters set up in the complaint, but the investigation has narrowed itself to two charges.

"The provision of the Constitution under which this proceeding has been instituted is as follows: 'County judges, county attorneys, and clerks of the District and County Courts may be removed by the judges of the District Courts for incompetency, official misconduct, habitual drunkenness, or other causes defined by law, upon the cause therefor being set forth in writing, and the finding of its truth by a jury.'

"As I have stated to you, your inquiry is confined to the two charges,—the one, habitual drunkenness; the other, official misconduct. The word habitual means the same in import as formed or acquired by habit, or customary, or usual, or common, by frequent practice or use. It means more than the word .sometimes; nor does it imply reduced to actual imbecility.

"Official misconduct means the same as wrong conduct, misbehavior, ill behavior, misdemeanor, misdeed, offense, delinquency, &c.; and it is for you to determine whether, under the evidence, it is true, as charged, that he has been guilty of official misconduct,—whether, when his duty called upon him to act in the interest of the State or county, he has used his position to prevent the due execution of the law, and willfully or corruptly to screen any person from a just prosecution for an offense.

"If he has used his position to prevent persons guilty of violating the revenue or other laws from prosecution, whether through favoritism or any improper motive on his part, it would be official misconduct.

"An officer may make mistakes and commit errors, and not be chargeable with official misconduct; but he must not use his position for sinister or corrupt motives. If he does, he is guilty of official misconduct.

"Mr. Trigg is not on trial for crimes charged against him

with a view to his prosecution and punishment therefor. It is true, that no man in this State can be prosecuted for an act made criminal without the act itself being defined by law and its punishment fixed. It does not, however, follow, as a necessary sequence, that official misconduct might not be shown, and an officer removed therefor, provided the evidence satisfied the jury that the charge was true in fact.

" You will find upon the evidence by answering these questions: 1. Is it true that B. Trigg is an habitual drunkard? 2. Is it true that he is guilty of official misconduct, as charged against him?"

In. behalf of the prosecution, the court further charged: " It is the duty of the county attorney to prosecute all persons who are charged with the violation of the criminal laws of Texas. Such being the law, you are charged, that if you believe, from the evidence, that the defendant, B: Trigg, in the cases of The State *v.* Bill Tong, tried before Justice Neill, did conduct the prosecution in either of said cases, willfully and with wrong motives, in such way as to defeat the State and acquit the defendant, then such conduct constitutes official misconduct."

At instance of the defendant, the court further charged the jury: " If the jury believe, from the evidence, that the defendant sought to have William Tong released from the prosecutions against him before Justice Neill for the purpose of using said Tong as a witness on the part of the State against a number of parties accused of violating the gaming laws, that would be an act within the scope of his official discretion, and no cause for his removal from office."

The jury returned their verdict, finding defendant guilty upon both issues, and further: " We, the jury, therefore find a general verdict for the State upon the questions submitted."

Upon this verdict the court entered a judgment removing defendant from office. A motion for new trial was overruled, and defendant appealed.

*Hancock, West & North,* for appellant.—The facts and nature of this case will be developed in connection with the discussion of the assignments of error, which present the following propositions:

1. The court erred in overruling appellant's motion to strike the alleged charges and amended charges from the files, and in not sustaining his exceptions thereto, and in permitting the jury to pass on them.

2. The court erred in its charge to the jury as to what constitutes drunkenness and official misconduct, as applied to the case at bar, and misled the jury by not sufficiently explaining to them the law applicable to this particular case.

3. The court erred in submitting special issues to the jury, and in entering a judgment of removal on the verdict returned into court.

I. This proceeding is supposed to be based on section 25 of article 5 of the present Constitution. It was instituted in the following manner: On April 18, 1877, the District Court of Travis county being then in session, (the term commenced April 16, 1877, and ended June 29, 1877,) an instrument styled in the record "a petition," and in which the relators call themselves "petitioners," was filed in court, without an order of the court, and without its authority. It purported to emanate from twenty-eight citizens, private individuals, residing in Travis county, moved so to do by the fact that they "are citizens deeply interested in the proper administration of the laws of the land," and setting forth no other interest, and no special interest or right in the premises.

After alleging that appellant was the lawful choice of the people for county attorney, and his due election as such at a regular election held in February, 1876, this petition alleged that he duly qualified, and was then in the discharge and exercise of his official duties.

It is further alleged, that since his election appellant has been guilty of divers and sundry acts contrary to the laws and Constitution of the State, and of such a character as "in

their opinion " required that he should be removed from his office, in order that the administration of the criminal laws might be properly carried on, and not fall into disgrace and contempt.

The relators then proceed to charge appellant with about seventeen crimes and misdemeanors, which are indicated in the opinion.

These charges ·are signed by counsel, but they are not sworn to. To the charges appellant objected, because the proceedings were unknown to the law, illegal, null and void.

Appellant's objections should have been sustained, for the following reasons :

1. Section 24 of article 5 of the Constitution, under which this proceeding is instituted, does not execute itself, and no steps can be taken under it until the Legislature shall have prescribed how, when, where, on what notice, &c., it shall be instituted and conducted.

2. Not only must the Legislature define the mode of procedure, but it must define the causes named, before the district judge can exercise the power with which he is clothed.

Incompetency, official misconduct, and habitual drunkenness must all have a specific meaning attached to them by the Legislature before the judge can exercise the power of removal; otherwise the meaning of these terms will vary with the views of every judge, and the probability is that no two of them will agree. The definition of official misconduct and habitual drunkenness furnished in the charge of the court in the present proceeding illustrates the matter.

3. If, however, it should be held that this constitutional provision is operative without legislative aid, then we insist that the charges presented in the petition are not sufficient, because they are not preferred under oath, and because the course of the common law has not been followed. (Gordon v. The State, 43 Tex., 330, and authorities cited; Bennett v. Ward, 3 Caine, 259; Cooley's Const. Lim., 2d ed., 58–60;

*Ex-parte* King, 35 Tex., 65, 76, and cases cited; Honey *v.* Graham, 39 Tex., 1–6, and cases cited.)

4. If this constitutional provision is self-operative, and the charges can be maintained without being supported by the oaths of the relators, then we insist that the charges set forth in the case at bar are not the character of charges contemplated either by the Constitution or laws.

The drunkenness for which an officer is to be removed from his office, is different from that here charged, and the manner of procedure is fixed by the act of 31st January, 1876, p. 76. The acts set forth in that law are different from the offenses here charged.

The words " habitual drunkenness" and " habitual drunkard," in the Constitution, are defined in the act of 18th August, 1876, p. 175, and this definition is different from the one adopted by the judge below in the trial of this cause; while the charges now under consideration are vague and insufficient under the law. (See act 17th August, 1876, p. 169, to punish drunkenness.)

II. We invite the attention of the court to the charge of the judge on the question of habitual drunkenness. It is erroneous, and doubtless misled the jury. It is also exceedingly obscure, and in fact envelops the whole case in Egyptian darkness.

III. The action of the District Court in submitting special issues to the jury is also erroneous. It is clear from the Constitution that the jury must find the truth of all the issues by a general verdict. If a verdict on special issues is sufficient, then the judge can submit only such issues to the jury as he chooses, and leave the general issue out of the case.

Again, this verdict is argumentative, and the facts do not justify it.

IV. The District Court below had no jurisdiction of the case, and the judgment should be reversed and the cause dismissed, as was done in the cases cited below. (Hearn *v.* Cutberth, 10 Tex., 216 ; Roeser *v.* Bellmer, 7 Tex., 1 ; Cowan

*v.* Nixon, 28 Tex., 230; Const. 1876, art. 5, sec. 9; Const. 1876, art. 5, sec. 16; as to habitual drunkard, art. 15, sec. 8; as to habitual drunkenness, art. 15, sec. 7; as to removal, Const. 1876, art. 1, sec. 19; due course of law, Story on Consts., sec. 1789.)

*Walton, Green & Hill* and *H. H. Boone,* for State.—It is needless to repeat the questions at issue particularly, inasmuch as the appellant seeks a reversal solely on the ground that the proceeding was not authorized, and was not conducted in a legal manner. We will therefore content ourselves with adding to the statement of appellant such facts and matters as may be material to the understanding of the points raised by us.

The first objection made by the defendant is, that section 25 of article 5 of the Constitution, under which this proceeding was had, is not self-executing. The clause is in these words: "Sec. 25. County judges, county attorneys, clerks of the County and District Courts, justices of the peace, constables, and other county officers, may be removed by the judges of the District Courts for incompetency, official misconduct, habitual drunkenness, or other causes defined by law, upon the cause therefor being set forth in writing, and the finding of its truth by a jury."

There is no reason why a clause in a Constitution shall not be self-operative without additional legislation, if the object of the clause and the means of obtaining the object are set forth with sufficient clearness that practical effect can be given to the provision.

Such provisions are of frequent occurrence in our Constitutions;—such, for instance, as in the rules governing legislation in the passage of laws; the apportionment of representation; the regulating interest on money; the regulations concerning the public lands; the homestead provision for heads of families. All these went into operation without additional legislation.

Then does this clause sufficiently define its object and provide sufficient means for its own enforcement, so that it can be acted on without further legislation? Let us see what it does, that we may ascertain what is wanting, if anything.

1. It provides particularly what officers may be removed.

2. It provides the forum wherein jurisdiction shall be had over such cases.

3. It provides three causes specifically, viz., incompetency, official misconduct, and habitual drunkenness.

4. The manner in which the charge shall be made; that is, in writing.

5. It provides how the cause shall be tried; that is, by a jury; and provides for the manner of their finding.

6. It provides that judgment of removal may be rendered on such finding.

What is there left to be provided for, with respect to these three causes, by further legislation? Here is a full and complete trial. Everything is especially enunciated that could be required, except as to who shall bring the charge, and the notice which shall be given to the officer; and these, we will show, do not relate to the substance, and were not material to the enactment in order to give it effect.

But it is insisted that the clause plainly contemplated further legislation. This we deny, as far as the causes are concerned which are named.

The clause is susceptible of division as to the causes for which an officer can be removed. The causes named, viz., incompetency, official misconduct, and habitual drunkenness, are positively provided for. Other causes in addition may be named by the Legislature. The expression " or other causes defined by law," in no way trenches upon the causes named in the Constitution; nor does it allow the Legislature to define the causes named, so as in any manner to detract from the ordinary meaning of the words incompetency, official misconduct, or habitual drunkenness. These causes, as understood by the Constitution at the time of its enactment, are

above legislative encroachment or interpretation. (Cooley's Const. Lim., 56, 57, 61, 64, 65, 83.)

2. It is next contended that legislation was necessary to define the offenses, and to prescribe how, when, where, and on what notice the proceeding should be had.

As to the first, we have already shown, that if the words employed had a definite signification at the time of the adoption of the clause, no legislative enactment could be ingrafted upon it, either to enlarge, diminish, or explain.

Have the words such definite signification as that they cannot be misunderstood?   Only two of the causes are here alleged.   First, official misconduct is defined by Bouvier as "unlawful behavior by a person intrusted in any degree with the administration of justice, by which the rights of the parties and the justice of the case may have been affected." (See word "Misconduct.")   No words can be superadded to make this clearer.   It was, then, only necessary to charge an unlawful act pertaining to his official duty by which the ends of justice might be affected, and the Legislature could not limit the term to particular unlawful acts.   Second, habitual drunkard, defined "habitual," formed or acquired by habit; frequent use, or custom.   "Drunkard," one who habitually drinks to excess; one who uses intoxicating liquors immoderately.— Webster.   If these definitions be the sense in which the words were used, without reference to any technical meaning, and be the intention of the convention, the meaning as used cannot be enlarged or diminished by a subsequent legislative definition.

3. The proceeding, it is said, was without oath to support it, and contrary to the course of the common law.

But it must be remembered that the clause in question is not in conformity with the course of the common law: a change was intended to be made in the object as well as the procedure.   "Misdemeanor in office" was cause for removal from an early day in England.   The subject seems, however, to have been regulated by statute; (Comyn's Dig., tit. Officer,

K. 3;) but this seems to be a more extensive word than "official misconduct." Habitual drunkenness is not put down at common law as a cause of removal. The clause, then, being an intentional alteration of the law, the words of Judge Cooley (Const. Lim., 61) apply with much force. He warns the courts, in applying the rule sought to be enforced here, of construing strictly a provision of the Constitution, and remarks, that "if courts are at liberty to say they will presume against any intention to alter the common law further than is expressly declared," they may defeat the provision altogether. "The real question is what the people meant, and not how meaningless the words may be made by the application of arbitrary rules."

Then what was meant by the provision that "the cause therefor should be set forth in writing"? If the common-law rules in removing one from office were understood as applicable, there was no necessity of specifying that the charge should be in writing. Something less, then, must have been meant, and that, in the light of the like clause in a former Constitution and the decisions thereon, clearly was, to dispense with any particular form in which the charge should be made, and only require that it should be in writing, and be such a charge as the judge would entertain and require the officer to answer.

So, the expression "that it should be set forth in writing" implied that no oath should be necessary, as in the case of information in the nature of *quo warranto* by a private person.

The information, however, was sufficient by analogy to the common law. Such informations were allowed to be filed by private persons at the discretion of the court. (High's Ex. Leg. Rem., secs. 628, 731, *et seq.*)

To insist on the rule demanded by counsel would defeat any action in this case whatever, as the officer against whom the charges are brought was the person in default.

The question, however, may be deemed to be at rest by the decisions of this court on a former Constitution. The

expression used in the Constitution of 1869, in respect to the offices of sheriff and clerk, was that they should be "subject to removal by the judge of the District Court of said county, for cause spread upon the minutes of the court." (Art. 5, sec. 18.)

The court declared the clause was self-executing, that it was not in conflict with section 16 of the bill of rights; that the rule *nisi* might be entered by the judge of his own motion, or upon the relation of another; that the proceeding was intended as a speedy and certain remedy against the evils of incompetency and malfeasance on the part of those officers; that all that was necessary was that there should be a plain and intelligible statement of the cause, and the officer should have notice and an opportunity to contest and disprove the charges. (Davis *v.* The State, 35 Tex., 122–125; *Ex-parte* King, 35 Tex., 664–667; *Ex-parte* Field, 37 Tex., 575; Gordon *v.* The State, 43 Tex., 339, and 47 Tex., 209.)

In the case at bar, there was (1) an information or petition in the name of the State, which was filed in court, duly served on defendant, so that he had ample notice. (2) There was a rule of the court entered recognizing the charges and citing the defendant to show cause why he should not be tried on the charges. This was duly served. (3) The defendant appeared, moved to strike from the files, demurred and answered. (4) There was a regular trial before a jury, charge of the court, verdict, and judgment. The notice was reasonable; no objection was made on that account, nor on account of want of oath having been made to the charges or information; full opportunity was given for defense, and a full defense was made. The proceeding, therefore, is unobjectionable. (Davis *v.* The State, and *Ex-parte* King, *supra;* Jackson *v.* The State, 21 Tex., 671.)

4. It is objected that the charges are not such as are contemplated by the Constitution for which an officer can be removed.

The charges are (1) habitual drunkenness, with many spec-

ifications of drunkenness; (2) official misconduct, embracing two distinct charges—that in relation to Tong, and that in relation to the collector of taxes.

These, if true, are sufficient. That there may be acts of misbehavior charged which do not amount to misconduct in office, is probably true; but there was no special exception to them by the defendant, and no exception to evidence thereon. The court, however, in its charge, presented only two issues, and those issues were official misconduct and habitual drunkenness.

5. It is said, however, that drunkenness and habitual drunkenness are defined by the acts of 1876, pages 76, 169, and 175, and we have not made charge or proof in conformity therewith. In answer we say:

(1) That the act of July, 1876, p. 76, is only another cause for removal from office which is defined by the Legislature as permitted by the constitutional clause under discussion. One who was not an habitual drunkard might be removed under that act. It in no way interferes with or explains the Constitution.

(2) The habitual drunkard defined under act of August, 1876, is an imbecile who is unable to take care of himself or his property, and for whom a guardian should be appointed. Surely the Constitution meant something more than this. In such case the party would be incompetent, and there would be no necessity for a provision for removing persons who were habitual drunkards. We think the suggestion shows the constitutional provision intended to reach other persons besides imbeciles.

(3) The act of August 17, 1876, has nothing to do with the subject, that we can see.

II. It is alleged, however, that the charge of the judge on habitual drunkenness is obscure and erroneous, and misled the jury.

The charge in this respect may not have been as full as it should be to a perfect understanding of the subject; but so far

42

as it goes it is not incorrect. Had the defendant desired any fuller or better definition, he should have asked a charge especially with reference to the subject. The words, in the ordinary sense, are well understood by the people; and doubtless the jury fully comprehended the instruction to mean that the habitual drunkenness named in the Constitution did not mean the state of imbecility that rendered a person incapable of taking care of himself or his property, and which required the appointment of a guardian, and which the counsel again here urges on the court. Nor did it mean only sometimes inebriated. It was more than one, and less than the other: it meant a usual or common practice of excessive drinking.

All we can say is, that there is no error in the charge as far as it goes, and it is the defendant's fault if it is not more clearly expressed.

The defendant did not ask any charge, and can take no advantage of the general charge, unless it is clearly errone-ous. (Linn *v.* Wright, 18 Tex., 317; Farquhar *v.* Dallas, 20 Tex., 200; Thompson *v.* Payne, 21 Tex., 625; Bast *v.* Alford, 20 Tex., 229; Powell *v.* Haley, 28 Tex., 56.)

III. The defendant objects that the verdict should have been on all the issues; that it should have been general; and that it is argumentative.

1. The only issues upon which a verdict could properly have been found, were those which were material to the question.

These the court presented in its instructions, which it was competent for the court to do. The statements which were immaterial were not objected to by the defendant; and in this case it was the duty of the court to have separated those which contained a cause of removal from those which did not. (Jackson *v.* The State, 21 Tex., 672.)

The only questions left to the jury, were whether the evidence established the fact of the habitual drunkenness of the defendant, and whether he had been guilty of official misconduct, as charged. Upon these the verdict was in the

affirmative.    These questions were properly put and properly answered.    (Rice v. Rice, 6 Ind., 100.)

2. That the verdict should have been general.

This we think an unwarranted assumption.    The Constitution, speaking of the subject, uses the expression that the party may be removed for the cause mentioned "on the finding of its truth by a jury."    This was not intended to limit the information to one of the causes, but only to require that each cause should be set out in writing, and that on any such cause, before a removal could be had, its truth should be found by a jury.    To our minds, it was absolutely requisite that there should be a finding on each cause named in the Constitution for which a removal was sought.

This was properly submitted.    (Jackson v. The State, 21 Tex., 672.)    Besides, it is the well-settled practice in civil cases to submit special issues.    (Paschal's Dig., art. 1499; Collins v. Cook, 40 Tex., 249.)

3. It is objected that the verdict is argumentative.

The fact is, the court submitted only the two issues above named, and the finding of a general verdict was not submitted.

The jury responded directly to the issues in the affirmative, and signed the name of the foreman, which was all that was necessary, and they then proceeded to find an additional verdict: "We, the jury, therefore find a general verdict for the State upon the questions submitted," signing the name of the foreman.

This verdict was not in any way opposed to the special findings, and in no way interferes therewith.    (Gregory v. Frothingham, 1 Nev., 253.)

At most, the finding of the general verdict was surplusage. (Patterson v. United States, 2 Wheat., 221; Bacon v. Callender, 6 Mass., 303; Duane v. Summers, 4 Yates, 441.)

IV. The court, however, will construe the proceedings in the light of the previous history of the subject, as shown by the clauses in the former Constitution and the adjudications

thereunder, and will effectuate the intention of the framers of the Constitution; which seems to have been to provide a speedy remedy for the purpose of removing from office such county officers as shall prove to be incompetent to perform their duties, or so misbehaved themselves as to bring the public interest into contempt. It was not intended the proceeding should be technical, formal, or tedious. Such informal or summary proceedings had for a long time before existed in respect to motions against sheriffs; (Paschal's Dig., 5106, 3781, 3796;) motions against attorneys for enforcing payment of money collected; (Paschal's Dig., 178;) and against attorneys to strike them from the roll. (Paschal's Dig., 176, 177.)

This being the object to be obtained, all that was deemed requisite was, that there should be a charge set forth in writing, of which the defendant should have notice, and which should be recognized by the court, so as to demand of the defendant the answer.

ROBERTS, CHIEF JUSTICE.—This proceeding was instituted in the District Court by a petition signed by V. O. Giles and a number of other citizens of Travis county, asking the removal of appellant, Bingham Trigg, from the office of county attorney, to which he had been elected at the general election in February, 1876, and which he then—to wit, on the 18th of April, 1877,—was holding; and setting forth as grounds for his removal, among other things not pertinent to the matter, two grounds, which were, that since his said election he had been guilty of habitual drunkenness and official misconduct.

It was instituted under section 24 of article 5 of the Constitution of 1876, which reads as follows: " County judges, county attorneys, clerks of the District and County Courts, justices of the peace, constables, and other county officers, may be removed by the judges of the District Courts for incompetency, official misconduct, habitual drunkenness, or

other causes defined by law, upon the cause therefor being set forth in writing, and the finding of its truth by a jury."

The petition was signed by counsel, was indorsed "The State of Texas (by relation of V. C. Giles *et al.*) *v.* Bingham Trigg, number 4,951," and was so entered on the docket of the court as the style of the case.

On the 19th of April, 1877, defendant Trigg, by his attorneys, filed a motion to strike the paper (meaning the petition) from the files of the court, "because said paper and proceeding is unknown to law, illegal, null and void."

On the 19th of the same month, a citation was issued, requiring the sheriff to serve him with a copy of the petition, and requiring him to show cause why it should not be tried and disposed of on the 25th of the same month; which was returned served on the 24th of the same month.

On the 24th, the same counsel who had appeared for the relators moved, in behalf of the State, for a rule against said Trigg to show cause why "the inquiry of the matters alleged in the petition should not proceed before a jury on the morning of the 25th instant"; upon which a rule to that effect was entered by the court.

On the 26th, the defendant, by his attorneys, filed a general exception and a general denial.

On the 28th, the defendant filed a special answer to the charge of misconduct, and on the same day the State, by the attorneys appearing for it, filed an amendment, setting forth another ground of official misconduct.

On the 1st of May, the case was tried. The court overruled the motion and exception of defendant. It was submitted to a jury selected by the parties; and upon a verdict of the jury, the judgment of the court was rendered removing said Trigg from said office. A motion for a new trial was made, setting up the same matters substantially that have been assigned as errors; which being overruled, and notice of appeal having been then given, the case is now for trial on appeal in the Supreme Court.

The first, second, and third assignments of error filed by defendant may be considered together, and are as follows:

" 1st. The court erred in not sustaining his motion to strike the pretended relation from the files of court.

" 2d. The court erred in not sustaining the exception of said Trigg to said pretended relation.

" 3d. The court erred in allowing the case to be heard by a jury under the pretended pleading."

These assignments of error present three distinct questions, which should be separately considered.

1st. Does the petition, with its amendment, properly present the charges of habitual drunkenness and of official misconduct required by the clause in the Constitution under which this proceeding was instituted, as a question of pleading, under the general exception taken to it ?

2d. Is such a proceeding maintainable in the District Court, as it was brought and conducted in this case, under the Constitution and laws of this State ?

3d. Is the judgment rendered the subject of an appeal to this court ?

Under the first question, the substance of the pleadings will be here exhibited, leaving out those parts that are superfluous.

First, then, as an introduction, the petition, filed the 18th of April, 1877, represents that Bingham Trigg was elected county attorney for the county of Travis at the general election held in February, 1876; that he has duly qualified as such, and is now acting in such capacity; and asks his removal for the causes set forth. Then follows the charge of habitual drunkenness, as follows, to wit: "Your petitioners now allege, and charge the fact to be, that since the election of Bingham Trigg to the office of county attorney as aforesaid, and the date aforesaid, he has been guilty of habitual drunkenness;" to which is added, "both in public and private places, and to such an extent as to incapacitate him from the performance of the duties of his high and respon-

sible position." And other allegations are made about his having been put in the calaboose, and being tried before the mayor, and being arrested by the police officers, and shooting pistols, and assaulting some one, and other such things, all of which are wholly impertinent to this charge.

They are impertinent and unnecessary, and should have been expunged, because, in the contemplation of the provision of the Constitution invoked for his removal from office, if he was guilty of "habitual drunkenness" he was thereby unfitted to hold said office, irrespective of its effects upon his capacity to discharge his official duties, or upon his moral character or conduct in public and private, as an individual in the community. However efficient in his official capacity or innocent in his conduct, or the reverse in either, he might have been, were matters wholly immaterial and out of place in the charge of habitual drunkenness, which is itself sufficient ground for his removal. They might be used in evidence to show the degree of intoxication, or want of it, in the effort to establish or refute the charge of the fact of habitual drunkenness, but not otherwise. This is not a trial to inflict punishment for an offense, but to ascertain a fact,— his habitual drunkenness,—which, if found, the Constitution has declared to be, in and of itself, a sufficient ground of unfitness for such office. Any effects or consequences can neither alleviate nor aggravate the ground for removal, and therefore are unnecessary and useless to be set out in the written charge required to be made in this proceeding. (See Const. of 1876, art. 5, sec. 24; Commonwealth *v.* Conley, 1 Allen, 6.)

As a question of pleading, that part of the petition that has been quoted sufficiently charges the habitual drunkenness without more, because it is a distinct fact within itself— a condition of body and mind produced by the excessive use of intoxicating liquors, spirituous, vinous, or malt, confirmed by habit. (2 Bish. Cr. Law, secs. 307, 308.) It is usually produced by oft-repeated indulgence in drinking to excess,

which is liable to have different effects upon different persons, and therefore cannot be described, or measured, or defined by the causes that produce it in any one instance, any more than insanity, or any other condition of body and mind produced by extraneous causes. It may properly be assimilated, in the mode of charging it, to indictments for barratry or against a common scold, where it is unnecessary to give in detail the instances exhibited or causes which produce the quality existing in the person sought to be reprobated by a prosecution as an offense. And so we find the charges of common or notorious drunkenness, where that is made an offense. (Whart. Prec., 457; Commonwealth *v.* Whitney, 5 Gray, 87.) In the case last cited, it is said " the being a common drunkard is an offense under the statute, and the words by which it is created are sufficiently descriptive of it." The judge on the trial of this case evidently took this view of the substance of this charge, as may be seen from the issue specially submitted to the jury. It may be otherwise in describing the other grounds, as incompetency may exist from very different causes, and official misconduct involves facts variant in different cases.

The petition embraces a period between the election, in February, and his induction in office, on the 18th of April, 1876, which doubtless the court would have had corrected if attention had been called to it by special exceptions.

After setting out the charge of habitual drunkenness sufficiently, the petition proceeds to specify certain instances of drunkenness, at different times during the year, from the 18th of April, 1876, to the 18th of April, 1877, while he was in office under said election, to wit, on the 30th of September, 1876, and on the 16th of January, 10th of March, and 2d of April, 1877.

If these four instances of drunkenness during the year were alleged as being sufficient to establish the fact contained in the charge of habitual drunkenness, it would have been error to have sustained the charge so qualified; because it

would not follow, either as a natural or a legal consequence, that getting drunk four times, each in different months of the year, would fasten upon a person the state or condition or quality of habitual drunkenness. That question was decided in a case where it was attempted to indict a person as a "common drunkard," by alleging that he had been drunk not less than three times within the last six months, in analogy to the common-law rule in reference to the offense of barratry, and it was held insufficient. (Commonwealth *v.* Whitney, 5 Gray, 86, 87.)

These specifications of instances of drunkenness, being in and part of the charge, may have had, and most probably did have, an influence with the jury in arriving at a conclusion as to what sort of repetitions of drunkenness would constitute the fact of the existence of habitual drunkenness submitted to them by the court. It was unnecessary to allege the instances of drunkenness, and its only legitimate purpose was to give the defendant notice of the times when the proof would be made of his having been drunk, and, if allowed to stand as part of the charge, should have been so explained to the jury.

The other ground for the removal of defendant was official misconduct.

In setting forth this ground, besides the introductory general charge, there are seven distinct specifications of matters alleged to be instances of official misconduct.

1. That one William Tong, having been charged before Justice Neill with being a vagrant, and with betting at a game called keno, said Trigg, on the 3d of April, 1877, did counsel and advise him as to his defense, and did become his surety on his bond for his appearance in each of said cases, without the consent of the said Neill.

2. That he did act as counsel and adviser to said Tong in said two cases.

3. That on the 13th of April, 1877, said Tong pleaded guilty to the charge of betting at a game of keno, and was

fined ten dollars by Justice Neill; that on the 14th of the same month said Trigg procured counsel for Tong, to wit, Isaac Frederick, and caused an appeal bond to be filed in said cause, and became himself one of the sureties on said bond, without the leave of said Neill so to do.

4. That on the 14th of April, 1877, Tong being on trial before Justice Neill for vagrancy on two grounds,—one, for being an able-bodied man who lived without work; and the other, for being a professional gambler,—Trigg assumed to prosecute the case for the State, and moved to dismiss it, which the justice refused to do, and that upon consultation with Tong's counsel, Mr. Pendexter, he selected the former ground to try him on, upon which he was acquitted, upon the testimony of Trigg and another witness, and that Trigg "vowed" in court that he knew that Tong was a professional gambler, and that he intended to have Tong acquitted.

5. That Trigg maliciously assaulted one Johnson, a police officer, on the 2d of April, 1877, not in self-defense, and he now stands charged with an assault with intent to murder.

6. The sixth ground need not be repeated, as there was no evidence about it.

7. The amendment to the petition stated that Trigg and M. A. Barnes were engaged in the retail liquor traffic, and did not pay the license tax, and he (Trigg) instructed the county collector (Johnson) to go before the grand jury and indict all persons engaged in the retail liquor traffic without license, except himself and Barnes.

Amidst this string of specifications, there may be selected one which certainly charges official misconduct, in assuming to prosecute Tong for vagrancy, and intentionally managing the prosecution so as to procure his acquittal, when he knew that he was guilty of the offense with which he was charged, and that he could then prove it.

That will suffice, on a consideration of the general exceptions to it, however improper it might be, in such a proceeding as this is, to put a party on his trial upon such a string of

specifications, as constituting a charge of official misconduct, had defendant specially excepted to it.

To save the necessity of stating it out of its connection as a part of the pleading, it may be here stated that Trigg filed a special answer to this charge, as follows, to wit: "That in the matters set forth as to said Tong the same is not true as alleged, but the facts were, that the evidence of Tong was necessary to the State, and the purpose of this respondent was to secure the evidence of said Tong, so that the State could convict certain parties in prosecutions then pending against them in Travis county." These specifications, and the issue formed by this special answer of fact, will be further considered in another part of this opinion, in connection with the evidence, charge of the court, and verdict of the jury.

2. Is such a proceeding maintainable in the District Court, under the Constitution and laws of this State?

It is contended by the defendant that this clause of the Constitution does not execute itself without further legislation, prescribing a mode of procedure, and defining more specifically the acts which are set forth in it as grounds of removal from office. In support of which, we are referred to section 7 of article 15, under the head of impeachment, which reads as follows, to wit: "The Legislature shall provide by law for the trial and removal from office of all officers of this State, the modes for which have not been provided in this Constitution." Also, the clause in the bill of rights, that "No citizen of this State shall be deprived of life, liberty, property, privileges, or immunities, or in any manner disfranchised, except by due course of the law of the land." Also, to that part of section 9 of article 5 which says that the clerk of the District Court shall be elected, and hold his office for two years, "subject to removal by information, or by indictment of a grand jury, and conviction by a petit jury." And also to the act of the Legislature declaring that "drunkenness, under the provisions of this act, shall consist in the immoderate use of any spirituous, vinous, or malt

liquors, to such degree as to incapacitate an officer from the discharge of the duties of his office, either temporarily or permanently." The object of this act is to punish all of the officers of the State who violated it by fines of not less than five nor more than one hundred dollars upon conviction, and by removal from office on the third conviction. (Gen. Laws 1876, p. 76.) The same Legislature passed a law punishing any person who might be convicted of drunkenness in a public place by a fine of not more than one hundred dollars. (Id., p. 169.) .

Both of these statutes have reference to the consequences of drunkenness, and impose penalties for it, under the circumstances provided, as a punishment for an offense; neither is it the same thing as that described in the Constitution, which is habitual drunkenness, as a disqualification from office, irrespective of its consequences.

They should, therefore, not be regarded as having been intended either to carry out or to have any relation to the constitutional clause, having a different object, and not being the same things in substance or in form.

The clause providing for the removal of the district clerk by information or indictment, seems to have been copied into all of the Constitutions, (except in that of 1869,) from the Constitution of the Republic of Texas, without any specific object, and without specifying the grounds of removal. (Sayles' Consts., p. 161; Const. 1876, art. 4, sec. 6; Const. 1845, art. 4, sec. 11, p. 198; Const. 1861, art. 4, sec. 11, p. 236; Const. 1866, art. 4, sec. 7, p. 310; Const. 1869, art. 5, sec. 9, p. 73.)

That clause was itself defective, in not specifying the grounds of removal; and if it had been omitted, its place was fully supplied by another provision in all of the Constitutions, which will be more particularly referred to hereafter. If it had been complete, it would only be one mode provided for the removal of the district clerk, not repugnant to the other more summary mode also provided in the Constitution.

And if that clause produced any difficulty in the removal of the district clerk, under the more summary mode, it would furnish no rule, by analogy or otherwise, to be applied to the removal of the county attorney, concerning whom there is no such provision. That clause and the statutes referred to not tending to show that other legislation was needed or contemplated to carry into effect the clause of the Constitution for the removal of county officers, it is necessary to consider it in view of its own provisions, in connection with the clause referred to in the bill of rights, which presents a much broader and more important consideration of the subject.

This provision of the Constitution was made in aid of, and to keep in order, the political organization of the State government, by a summary mode of removing county officers, not until lately adopted in reference to any of them. It in effect declares habitual drunkenness to be a disqualification from holding such offices, and points out a summary mode of determining that fact, and of executing the declared consequence of removal by the district judge, "upon the cause therefor being set forth in writing, and the finding of its truth by a jury." It is not a declaration of delinquency in an officer, and a mode of punishing him for it in the nature of a forfeiture of a franchise; nor is it a trial to determine the capacity or character of an officer, relating to the discharge of his duties. The office being elective, the qualified voters of the county have, by his election, declared in favor of his fitness for the office in those respects; but the people of the whole State have declared, by this provision of the Constitution, that he is disqualified from holding the office, notwithstanding his election, if he is found, by the means thus provided, to be guilty of habitual drunkenness. His right to the franchise is thus made subject to that limitation; and the term of his office is thus subjected to a shorter period than the two years for which he was elected. He received the office subject to its being terminated, and his place being filled by another person, in the mode pointed out by the Constitution.

In this point of view, it is a part of the political machinery in the State government to keep the country supplied with qualified officers, although it may assume in its execution the shape of a judicial proceeding in a civil cause in the District Court.

In the Constitution of the Republic, the only mode pointed out for the removal of officers was by a law being passed for that purpose. (Gen. Prov., sec. 1, Sayles' Consts., p. 168.)

In the Constitution of 1845, there was a provision for the removal of the executive officers and judges of the Supreme and District Courts by impeachment, and also a provision for other officers, as follows, to wit: " Art. 9, sec. 6. The Legislature shall provide for the trial, punishment, and removal from office of all other officers of this State, by indictment or otherwise." It was then also provided for the more summary removal of the judges of the Supreme and District Courts by an address of two-thirds of both houses of the Legislature. These provisions for the removal of officers have been continued, substantially, in all of the State Constitutions up to the present time.

In the Constitution of 1869, there appeared an advance upon these, in reference to the offices of the sheriff and district clerk, which made them " subject to removal by the judge of said court," (referring to the District Court,) " for cause spread upon the minutes of the court." (Const. 1869, art. 5, sec. 9, 2 Paschal's Dig., p. 1119.) It also provided for the removal, by address, of all civil officers, except those whose removal is otherwise provided for. (2 Paschal's Dig., art. 12, sec. 41, p. 1131.)

Following up this advance, the Legislature, in the act of 1870, for the assessment and collection of taxes, provided for a summary mode of removing justices of the peace, (who were assessors of taxes,) by the District Court, for neglect of duty or misconduct in office. Cases arose and were decided by the Supreme Court under these provisions, which will be adverted to.

In the Constitution of 1876, still other advances were made upon this summary mode of removal of officers, by providing for a removal of the district judges, by a proceeding before the Supreme Court, and by this provision for the removal of all of the county officers, by the district judge. (Const. of 1876, art. 15, sec. 6, and art. 5, sec. 24.)

This will suffice to show the origin and progress in this State of the more summary modes of removal of officers, in addition to remedies by impeachment, and by information and indictment. It demonstrates the conviction of the increasing necessity for the more speedy removal of officers than can be attained by the old, well-established remedies of impeachment in the Legislature, and of indictment or information in the courts, and for causes that are declared to be sufficient to disqualify the officers, some of which would not ordinarily have been grounds of removal under those more regular remedies.

The act of 1870, providing for the removal of justices of the peace in a summary way, was decided by the Supreme Court to be unconstitutional, because the Constitution had provided in section 24 of article 5 that "all county and district officers, whose removals are not otherwise provided for, may be removed, on conviction by a jury after indictment, for malfeasance, nonfeasance, or misfeasance in office." (*Ex-parte* T. E. Hogg, 36 Tex., 14.) That Constitution also, after providing for impeachments, provided further: " That the Legislature shall provide for the trial, punishment, and removal from office of all other officers of the State, by indictment or otherwise." (Const. 1869, art. 8, sec. 6.) Notwithstanding these provisions, as well as those in the bill of rights, it was held by the Supreme Court of this State that a summary proceeding of this kind could be maintained against the sheriff under that provision of the same Constitution which made him, though elected by the qualified voters of the county, " subject to removal by the judge of the District Court for said county for cause spread upon the minutes of

the court." (Const. 1869, art. 5, sec. 18; Paschal's Dig., 1117; Davis *v.* The State, 35 Tex., 123.)

In that case, it was said by Justice Ogden, delivering the opinion of the court: "The evident intent and purpose of this clause of the Constitution was to put the sheriff directly under the immediate supervision and control of the judges, with full power and authority to remove summarily for any cause, whether punishable as a crime or not, yet which might hinder and delay the business of the court, if not wholly defeat the ends of justice." The case was reversed, because the ground for dismissal was held to be insufficient. This view of the case was somewhat modified, rather by the mode of procedure required than by objection to the power of summary removal given by it, in a subsequent case, in which the opinion of the court was delivered by P.-Justice L. D. Evans, which was in a summary proceeding against the clerk of the District Court, under a similar provision for his removal by the district judge, and in which it is said: "We conclude that when the Constitution of the State clothed the district judge with the power summarily to deprive an officer of an office to which he had been elected by the people, it was intended that in the exercise of that power the judge should proceed in obedience to the rules of the common law. The proper mode of procedure would be to enter a rule *nisi*, requiring the officer to show cause why he should not be removed from his office; and this rule *nisi* may be entered by the judge of his own motion, or upon the relation of another; but the rule should in every case set forth in plain and intelligible words the cause for which it is proposed to exercise the power of removal;" and such cause "must be such incompetency, or such nonfeasance, or malfeasance, or corruption, or partiality in his office, as will amount to a forfeiture of the right to enjoy it." The case was reversed, because it appeared from the record that the clerk had not been afforded an opportunity "to answer, or to question the sufficiency in law, or the truth in fact, of the charges made against him."

(*Ex-parte* King, 35 Tex., 666, 667; *Ex-parte* Fields, 37 Tex., 575.)

The same subject came before the Supreme Court at the Austin Term, 1875, in the case of Gordon *v.* The State, which was a summary proceeding for the removal of the sheriff by the District Court, acting under the provision of the Constitution of 1869.     (43 Tex., 338.)

In that case, the Supreme Court was placed under the alternative of deciding that the clause of the Constitution which rendered sheriffs subject to removal by the district judge for cause spread upon the minutes of the court, conferred an absolute, irresponsible, and discretionary power in the district judge, or of following the decisions of the court previously made, which placed some limitations upon that power.

In deciding that case, a summary statement was made of the result of those decisions: that the power was not absolute or arbitrary, either as to the manner in which or the causes for which it may be exercised; that the sheriff is entitled to notice of the charges against him, and an opportunity to be heard in his defense; that the charge must contain specific and not general allegations of incompetency or unfitness for the office; and that where a removal is made irregularly, or for insufficient cause, the order or judgment is subject to be revised on appeal.     It is then said in the opinion: "These principles are substantially laid down in the cases referred to, and are believed to give the proper construction to this clause of the Constitution, giving some weight to every part, and at the same time, between two constructions, inclining to that in harmony with other parts of the Constitution and with the rules of the common law."

These opinions were of a character to attract public attention, and were all decided before, and not long before, the session of the convention in 1875 and 1876 that readopted this clause, and applied it to all of the county officers, and, as we may reasonably suppose, ingrafted upon it what the Supreme Court had held to be essential in its enforcement,—

43

the causes for removal, two of which were "habitual drunkenness" and "official misconduct," to be "set forth in writing," and to which was added (by way of further limitation upon the judge's power) "the finding of its truth by a jury." This recognition and enlargement of this provision, with its modification by the decisions of the Supreme Court, is regarded as an authoritative adoption of the summary remedy as it had been previously construed and acted on by the Supreme Court in the cases that have been cited, and is sufficient authority for this court to act upon it, under the principles that have been announced in those decisions, and under the terms of the clause itself, without further legislation. In deciding this to be a mode of removal prescribed by the Constitution, it is not questioned that the Legislature might prescribe the forms of proceedings, wherein the clause is silent, as to notice, style of the case, terms on which a relator should make a charge against an officer, and the like. Until that is done, we must follow the views that have been presented by the court in acting upon the similar, but formally much more defective, clause in the Constitution of 1869.

There was a propriety in the style given this case in the court below, of "The State *v.* Bingham Trigg"; for it is emphatically a proceeding on the part of the State to remove an officer from the service of the State and county.

There is no objection seen to the permission of a charge being made by a relator, if the judge, who is made by the Constitution responsible for the inception and proper conduct of this proceeding, will see first that it is a charge in proper form, and have good grounds for believing it has a reasonable foundation, and will so far sanction and adopt it, as was done in this case, by entering a rule for the officer to be notified of the charges and show cause why he should not be held to answer them. Whether his belief of reasonable foundation of the charge should be superinduced by the oath of the relator or otherwise, must depend upon the judge's discretion, as the clause does not require the cause in writing for

removal to be sworn to. It would seem proper, also, for the district attorney or county attorney, when not disqualified, to prosecute the case on behalf of the State,—not doubting, however, the authority of the judge to request other attorneys to act, where the State, for any cause, is not otherwise represented, or to act as assistants of the State's counsel. These suggestions, in relation to the proper practice in this proceeding, are drawn by analogy from "informations in the nature of a *quo warranto*" as practiced in England, and in many of the American States, for the removal of an officer from his office. That, when filed at the instance of a relator, rests upon the sound discretion of the court to admit it. (High on Ex. Rem., secs. 591, 605, 608.) The allegations must be specifically made, and, in some shape of oath, sworn to by the relator. (Id., secs. 733, 734, 759.)

Surely, in an extraordinary and summary proceeding of this kind, imposing upon the judge the responsible and delicate duty and the high power of removing a whole class of officers, in order to preserve, if necessary, the proper organization of the State government for the execution of the laws, such orderly and well-defined regulations should be adopted in the judicial inquiry as may be consistent with its prompt and faithful exercise.

The third question under the exception, the right of appeal to the Supreme Court, was considered in deciding the motion to dismiss this case, and it has been expressly sustained in the several decisions that have been referred to.

More than usual attention has been given to this branch of the case, because the existence of the power of the judge, and of the remedy adopted to exercise it, have been invariably questioned whenever a case has arisen; and although the Supreme Court have invariably sanctioned the existence of the power, it has as invariably decided against the irregular or improper mode of exercising it.

We come now to consider the merits of this case under the other assignments of error, which relate to the charge of the

court, the special issues submitted, the finding of the jury upon the issues, and the sufficiency of the evidence to sustain the verdict.

The court submitted two questions to the jury, as follows, to wit: "Is it true that B. Trigg is an habitual drunkard?" "Is it true that he is guilty of official misconduct, as charged against him?" To both of these questions the jury answered "Yes." To which the jury, apparently of their own accord, added: "We, the jury, therefore find a general verdict for the State upon the questions submitted." This verdict is the result of the finding from the charge of the court, and the evidence adduced, under the pleadings of the parties.

First, as to the charge of habitual drunkenness. The court told the jury that "the word habitual means the same in import as formed, or acquired by habit, or customary, or usual, or common, by frequent practice or use. It means more than the word sometimes; nor does it imply reduced to actual imbecility." That was all. Now, the question is,—Did this charge, in connection with the general charge of habitual drunkenness in the petition, and the four specifications of instances of drunkenness, and the evidence upon those instances, furnish any proper guide to the jury in determining whether or not B. Trigg was guilty of habitual drunkenness? Was it not well calculated to leave the jury to conclude that the proof of the four instances charged would be sufficient to establish the charge against him, and enable them intelligently to answer his direct question? For there was no evidence of excessive drinking day after day, or even every week, so as to engender a fixed habit of drunkenness.

In Pennsylvania, where an inquest was held to determine whether or not a man was an habitual drunkard, it was decided that his capacity to manage his business was not in the issue, and was immaterial; and in describing habitual drunkenness the Supreme Court said: "Occasional acts of drunkenness do not make one an habitual drunkard; nor is it necessary that he should be continually in an intoxicated state.

A man may be an habitual drunkard, and yet be sober for days and weeks together. The only rule is, has he a fixed habit of drunkenness ? Was he habituated to intemperance, whenever the opportunity afforded." (Ludwick v. Commonwealth, 6 Harris, (Penn.,) 174.)

This view of what habitual drunkenness is, corresponds with the common understanding of it; and if such an explanation had been given to the jury, they could hardly have found that Trigg was an habitual drunkard from the evidence in support of the charge: that he had been drunk on four several days, or nights, each in a separate month during the year that he was in office, under said election, from the 18th of April, 1876, to the 18th of April, 1877, and at one of the times the fact that he was drunk was strongly contested in the evidence.

If a man is guilty of habitual drunkenness, it will seldom be difficult to prove it. If his face, walk, and demeanor have not yet proclaimed it, his daily associates, and even his casual acquaintances, will soon find it out. This constitutional provision was never intended to reach doubtful cases, or cases based upon occasional and isolated acts of intoxication, so scattered in point of time as not to have generated a habit of drunkenness, liable to be exhibited at any time, when the opportunity offered.

The charge of the court on the ground of official misconduct, instructed the jury that "official misconduct means or relates to misconduct in, or about, or pertaining to the duties of the office. The word misconduct means the same as wrong conduct, misbehavior, ill behavior, misdemeanor, misdeed, delinquency, offense, &c." The charge then proceeds to instruct the jury, (1) that if Trigg used his position to willfully or corruptly screen any person from a just prosecution, (referring to the Tong case,) he is guilty of official misconduct; (2) so if he has used his position to prevent persons guilty of violating the revenue or other laws from prosecution, (referring to the charge of his telling Johnson, the collector, to prosecute

all others who had not paid their license taxes, except himself and his partner,) through favoritism or any improper motive on his part; and (3) that though Trigg is not on trial for crimes charged against him with a view to his punishment therefor, it does not follow as a necessary sequence that official misconduct might not be shown, and an officer removed therefor, provided the evidence satisfied the jury that the charge was true in fact. Though this last charge may not be very plain in terms, it very plainly means, when viewed in reference to a certain specification in the petition and the evidence under it, that if Trigg had committed an assault with intent to murder upon one Johnson with a pistol, and if the jury were satisfied of that fact, it would be official misconduct, for which he might be removed from office.

Now, is it true that it is official misconduct for one acting as county attorney to shoot a pistol at a man, when not in the discharge of the duties of his office? Is it true that a county attorney is guilty of official misconduct in asking a tax collector not to prosecute him and his partner, as liquor dealers, for not paying their license tax? They may come under some of the meanings above given of misconduct, as "offense," "misbehavior," "wrong conduct," and the like, but hardly official misconduct, or misconduct having relation to the duties of his office of prosecuting attorney for the State and county. The first charge, in reference to the Tong case before Justice Neill, was qualified by a charge asked by the defendant's counsel, and given, as follows: "If the jury believe, from the evidence, that the defendant sought to have Tong released from the prosecution against him before Justice Neill, for the purpose of using said Tong as a witness on the part of the State, against a number accused of violating the gaming laws, that would be an act within the scope of his official discretion, and no cause for his removal from office."

Trigg in his evidence states that such was his object, having previously made Tong a witness for the State, in a num-

ber of prosecutions filed in Justice Tegener's court for betting at keno, under an assurance of personal indemnity for said offenses; that the persons thus prosecuted had conspired to defeat the prosecutions, by the charges made against Tong before Justice Neill, and by his imprisonment in consequence of said prosecution, instituted for that purpose; and that what he did was to defeat said conspiracy and protect Tong, as his witness, according to his promise and assurance to him. There was other evidence strongly confirmatory of these facts, and not a single witness was offered to refute or disprove them, or to raise a suspicion that Trigg had any other motive than that thus exhibited by the evidence of himself and others, in seeking and procuring the release of Tong, which he did, and did afterwards use him as a witness in the prosecution of one of such cases, and which he was only able to do by the interference of Justice Tegener to prevent two of Justice Neill's officers from taking Tong off during the trial. We should hardly conclude that under this charge and under this evidence B. Trigg, as county attorney, was guilty of such official misconduct in this matter as that he should be removed from his office.

It is unnecessary to pursue this discussion further, as it is obvious that the whole proceeding has been conducted in an irregular manner, not calculated to ascertain the two important facts of Trigg's guilt of habitual drunkenness and of official misconduct. In the very outset, the causes for his removal, required to be set forth in writing, are presented to the court in the form of two general charges, with a number of specifications under each, in the style and manner of charges made in the trial of an officer of the army before a regular court-martial. There is but one specification under each, out of many, that supports the charge. This summary proceeding, certainly, was not designed by the framers of the Constitution to assume the form of a trial before a court-martial. This incongruity is what made it necessary for the judge to present special issues, in the shape of direct questions,

to the jury, contrary to the plain import of the clause, which evidently contemplates that each cause of removal (when more than one) should be set out, in a plain statement of such facts as constitute the cause, and that the jury should find such statement of facts in writing, as it is set out, to be true.

To have carried out the military style of trial, the jury should have indicated which of the numerous specifications they found to be true, and thereby it could have been seen whether or not their conclusion was correct upon the general charges, which they apparently found of their own accord, after answering the specific questions propounded to them by the court. And if viewed in the light of a petition in a civil proceeding, presenting numerous causes for removal under two heads, most of which were insufficient in themselves as distinct causes, it may be asked, which one or more of said differently-stated causes did the jury have in view as having been proved which enabled them to answer both of the questions propounded to them by the court in the affirmative?

Much allowance is to be made in a novel and unusual proceeding of this kind, where there are no long-established precedents and forms of procedure to follow.

While recognizing this, we are constrained to hold, that in this case, as in the cases that have gone before it, as found in our Texas reports, the proceedings have not been such as can be sanctioned by this court as appropriate for the removal of the defendant under the clause in the Constitution on which it is founded.

The judgment is reversed and the cause remanded for such action, if any, as the district judge, upon his own responsibility, and under the duty imposed on him by the Constitution, may see proper to direct.

REVERSED AND REMANDED.

Justice MOORE dissented from the opinion so far as it held

that legislative action was not necessary to enforce the power given district judges in section 24 of article 5 of Constitution.