BONNER v. BELSTERLING.

No. 2294. Decided June 23, 1911.

LEFEVRE v. BELSTERLING.

No. 2295. Decided June 23, 1911.

**1.—Constitutional Law—Recall.**

A provision in a city charter for the recall of elective officers by popular vote is not violative of the Constitution of the United States nor of that of the State of Texas. Dibrell, J., dissenting.) (Pp. 433-439.)

**2.—Same—Removal of County Officers.**

Though the recall is a method of removing an incumbent from office, members of the Board of Education vested by a special city charter with control of its public schools are not county officers, and a provision in the charter for their recall by popular vote is not violative of article 5, section 24, of the Texas Constitution, though the manner of removal of county officers there prescribed be deemed exclusive, which is not determined. (Pp. 435, 436.)

**3.—Same—Cases Distinguished.**

Hendricks v. State, 20 Texas Civ. App., 178; Kimbrough v. Barnett, 93 Texas, 301; distinguished. (P. 436.)

**4.—Recall of Officers—Constitutional Law—Republican Form of Government.**

The power to recall officers by popular vote is not violative of article 4, section 4, of the Federal Constitution guaranteeing to every State a Republican form of government. Meaning of this phrase explained. (Pp. 437, 438.)

**5.—Recall—Constitutional Law—Term of Office.**

One elected to public office from which, by then existing law, he was subject to removal through recall by popular vote, can not complain of the exercise of such power of recall as a violation of article 16, section 30, of the Constitution of Texas, depriving him of a vested right in the office. (Pp. 438, 439.)

**6.—Recall—Constitutional Law—Trial and Removal from Office—State Officer.**

Article 15, section 7, of the Constitution of Texas, directing the Legislature to provide by law "for the trial and removal from office of all officers of this State," applies only to State officers, not to those of a city. (P. 439.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Dallas County.

The actions were brought by Bonner and by Lefevre against Belsterling and others, and writ of error was obtained on affirmance by the Court of Civil Appeals of judgments rendered for defendants by the trial court. The opinion here rendered disposes of both cases, which involved the same questions.

*E. G. Senter* and *A. B. Flanary,* for plaintiffs in error. (Their briefs did not reach the Reporter.)

*Jas. J. Collins, Lee Richardson* and *Lawther & Worsham,* for defendants in error.—A public office is not "property" within the meaning of the provision of the Federal and State Constitutions that "no person shall be deprived of life, liberty or property without due process of law." Nor is a public office the subject of contract. At-

torney-General v. Jochins, 99 Mich., 358, 23 L. R. A., 699; In re
Carter, 74 Pac., 997; Butler v. Pennsylvania, 51 U. S., 402; Augusta
v. Sweeney, 44 Ga., 463; Throop on Officers, secs. 345, 346, 17-19;
Conner v. Mayor, 5 N. Y., 296; Nichols v. McLean, 101 N. Y., 533;
Hoboken v. Gear, 27 N. J. Law, 273; Kenny v. Hudspeth, 59 N. J.
Law, 322; State v. Council, 53 Minn., 242; Donohue v. County, 100
Ill., 94.

It is competent for the Legislature, in granting a special charter
to a city of over ten thousand inhabitants to prescribe therein for
the recall of any elective officer deriving his authority from the said
special Act of the Legislature creating his office, and such exercise
of authority is not contrary to a Republican form of government, nor
is it inhibited by any of the provisions of the Constitution relating
to the removal of certain other kinds of officers. Hilzinger v. Gilman,
105 Pac., 472; Ericson v. Des Moines, 115 N. W., 117; Good v.
Common Council, 90 Pac., 45; Brown v. City of Galveston, 97 Texas, 1;
Southwestern Tel. & Tel. Co. v. City of Dallas, 134 S. W., 321;

It is competent for the Legislature to remove a public officer before
the end of his term, and such a removal is not contrary to due process
of law, and the same does not involve the violation of any contract
right nor the taking of any property. Taylor v. Beckham, 178 U. S.,
546; Griner v. Thomas, 104 S. W., 1058; Attorney-General v. Jochins,
99 Mich., 398, 23 L. R. A., 699; People v. Chicago, 242 Ill., 261;
In re Carter, 74 Pac., 997; Butler v. Pennsylvania, 51 U. S., 402;
Augusta v. Sweeney, 44 Ga., 463; Throop on Officers, secs. 345, 346,
17-19; Conner v. Mayor, 5 N. Y., 296; Nichols v. McLean, 101 N. Y.,
533; Hoboken v. Gear, 27 N. J. Law, 275; Kenny v. Hudspeth, 59
N. J. Law, 322; State v. Council, 53 Minn., 242; Donohue v. County,
100 Ill., 94; Ex parte Lembert, 52 Ala., 79.

Article 9 of the Dallas city charter is not prohibited by any pro-
vision of the State or Federal Constitutions and is a grant within
the power of the Legislature under sec. 5, art. 11, of the Constitution.
Southwestern Tel. & Tel. Co. v. City of Dallas, 134 S. W., 321;
Southwestern Tel. & Tel. Co. v. City of Dallas, 131 S. W., 83; Brown
v. City of Galveston, 97 Texas, 1; Hilzinger v. Gillman, 105 Pac.,
472; In re Pfahler, 88 Pac., 271; Good v. Common Council, 90 Pac.,
45; Kadderly v. Portland, 74 Pac., 710, 75 Pac., 222; Pacific States
Tel. & Tel. Co. v. State, 99 Pac., 427; Graham v. Roberts, 85 N. E.,
1009; Eckerson v. Des Moines, 115 N. W., 177; City of St. Louis v.
Western U. Tel. Co., 149 U. S., 467-470; Merriwether v. Garrett, 102
U. S., 511.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

The city of Dallas has a population exceeding ten thousand, and
by special Act of the Thirtieth Legislature of Texas and by an amend-
ment of its charter by the Thirty-First Legislature it was created a
municipal corporation. Section 1 of article 5 of the charter provides
for a board of education in this language:

"The city public schools shall be under the management and con-
trol of a board of education, composed of a president and six members,

who shall be elected on the first Tuesday of April, 1908, and at a regular election to be held biennially thereafter on the first Tuesday of April, and shall hold their offices for two years and until their successors are elected and qualified. Any vacancy occurring in the board of education shall be filled by an election to be held by said board, and the person elected shall hold office for the unexpired term. The members of said board shall serve without compensation, shall have exclusive control of the public schools of the city of Dallas, and shall have full and ample authority, in accordance with the provisions hereof, to provide necessary school buildings and facilities, and to open and conduct a sufficient number of schools to meet the wants of the scholastic population of the city of Dallas, so far as they can do so by prudent and judicious application of the means made subject to their administration and management. Among the powers hereby conferred on said board of education, the following are for greater certainty enumerated: To contract for, lease and purchase lots, and to construct buildings for school purposes, and to make all needed repairs and alterations in same; to furnish said school buildings with all appropriate furniture, fixtures and apparatus; to sell or dispose of school property when the same is necessary or advisable; to lay off the city into such school districts as, in the judgment of the said board, shall be proper; to increase or diminish said districts, and to change the boundaries thereof at pleasure; to employ superintendents, teachers and such other persons as may be necessary, and to fix their compensation and prescribe their duties, and to establish all such regulations and rules deemed necessary by the board to provide and maintain an efficient system of public schools in the city of Dallas. The board of commissioners, when levying the annual tax for the fiscal year, shall levy an ad valorem tax of one-fourth of one percent of the taxable value of the city of Dallas for that fiscal year, and said tax, when collected, shall be deposited with the city treasurer by the board of commissioners to the credit of the school fund, which said sum, together with all sums received from the State, county and other school funds, shall be held by the city treasurer subject to the order and disbursement of the board of education, and shall be paid out upon warrants issued by order of said board of education, audited by the city auditor and signed by the president and secretary of the board of education."

Article 9 of the charter provides: "The holder of an elective office may be removed at any time by the qualified voters of the city of Dallas. The procedure to effect the removal of an incumbent of an elective office shall be as follows: A petition signed by the qualified voters of said city, equal in number to at least thirty-five percent of the entire vote cast for candidates for the office of mayor on the final ballot at the last preceding general municipal election, demanding the election of a successor of the person sought to be removed, shall be filed with the city secretary; provided, that the petition sent to the board of commissioners shall contain a general statement of the grounds for which removal is sought."

It is conceded that the recall election was conducted according to

the charter and it is therefore unnecessary to copy that portion which prescribes the manner of proceedings in such elections.

After the enactment of the charter and the amendment thereof, to wit, on the 5th day of April, 1910, an election was held under the terms of the charter for members of the board of education, and C. C. Lane was elected president; H. D. Audrey, Robert N. Watkin, Shearon Bonner, petitioner herein, L. K. Wright, John W. George, and John C. Mann were elected members of the said board, all of whom were duly installed according to the requirements of the law. On the 11th day of August, 1910, another election was held and John W. George and J. C. Mann were removed from the said board, and J. D. Carter and J. B. McCraw were elected and installed as such, and, thereafter, on the 4th day of April, 1911, there was another recall election held under and in compliance with the provisions of article 9 of the city charter, at which E. A. Belsterling was elected president and J. D. Carter, John B. McCraw, M. A. Turner, W. A. Goode, and Frank Gilbert were chosen as members of the board of education to succeed those previously named, including the plaintiff, Shearon Bonner.

Shearon Bonner instituted this suit against the appellees in the District Court of Dallas County for the purpose of obtaining restoration to the office from which he had been removed by the recall, and also to obtain a mandatory injunction requiring the parties who were elected at the recall election to surrender their said offices. The judge of the District Court sustained a general demurrer to the petition and dismissed the case, which judgment was affirmed by the Court of Civil Appeals of the Fifth District.

Counsel for the plaintiff in error assert that the recall provision of the charter of the city of Dallas is violative of the Constitution of the United States in many respects, and that it is also violative of the Constitution of the State of Texas in fifteen particulars. We do not feel called upon to discuss separately each of the objections made to the validity of the charter. We have examined each one of them sufficiently to satisfy ourselves that they are not of sufficient importance to require a separate discussion, therefore we overrule such as are not distinctly treated in this opinion.

It is claimed that the recall is a method of removing the officers of the city of Dallas and is violative of article 5, section 24, of the State Constitution, which reads as follows:

"County judges, county attorneys, clerks of the District and County Courts, justices of the peace, constables, and other county officers, may be removed by the judges of the District Court for incompetency, official misconduct, habitual drunkenness, or other causes defined by law, upon the cause therefor being set forth in writing, and the finding of its truth by a jury."

It is claimed that the members of the board of education of the city of Dallas are county officers and that they are therefore embraced within the article of the Constitution above copied and can not be removed in the manner attempted. The language of article 9 of the charter distinctly says that all elective officers may be "removed" in the manner therein provided. We are of opinion that the recall is a

method of removal, and, so regarding it, we will proceed to inquire whether the officers involved in this proceeding come within the provision of the Constitution above copied. If they are within the designation, "other county officers," the proceeding for removal provided by the Constitution might be held to be exclusive and that the Legislature could not authorize such removal by the recall method, but it is not necessary to decide that question.

In Hendricks v. State, 20 Texas Civ. App., 178, the Court of Civil Appeals for the First District held that a trustee of a school district was an officer of the county within the meaning of section 24 of article 5 of the State Constitution and subject to removal by the District Court. In that case the district was a subdivision of a county and the trustee derived his authority solely from the general law which applied to the county. He was therefore an officer in the county and of the county in the same sense as was a justice of the peace. The court properly held that he was subject to removal under the article above stated.

In Kimbrough v. Barnett, 93 Texas, 301, this court answered the following question, which was certified to it by the Court of Civil Appeals of the First District: "Is the position of superintendent of the public schools of the city of Houston an office for which a suit may be maintained in the District Court?"

To that question this court answered as follows: "We answer the first question in the affirmative. The position of superintendent of the free schools in the city of Houston is an office, and the lawful incumbent of it would have a right of action to recover it or its emoluments in case he was unlawfully deprived of the benefit. State v. Catlin, 84 Texas, 48."

It will be observed that the question to be answered embraced only one proposition; that is, was the position of superintendent of public schools of the city of Houston an office for which suit might be maintained in the District Court? The answer which is copied above fully and completely answered that question and in the course of the discussion this court said: "We think there can be no doubt that a school trustee of an independent school district in this State is a county officer, as was held in the case of Hendricks v. State, 20 Texas Civil Appeals, 178."

The board of education of the city of Dallas was created and its powers and duties prescribed by article 5 of the charter of the said city hereinbefore copied. The board derives its existence and all of the authority it possesses from the charter, which operates only within the limits of the city. By the provisions of the charter the board had entire control of the school fund and of the property, in fact, of everything pertaining thereto. The auditor of the city is required to pass upon all accounts of the said board and no act of the board has any reference whatever to the county or its officers. The relation of the board of education to the county is only incidental to its being a part of the system of free schools of the State. We therefore conclude that the members of the board of education are officers of the city of Dallas and not of the county of Dallas. Gertum v. Board of Officers, 109 N. Y., 174; Throop on Public Officers, section 27.

The members of the board of education being of the city were not within the terms of article 5, section 24, of the Constitution, and it was within the power of the Legislature to provide for their removal otherwise than by the judge of a District Court.

Except as limited by the Constitution of the United States the people of Texas have the right to adopt any form of government which they may prefer, and, subject to the same limitations and such limitations as may be found in the State Constitution, the Legislature may confer upon any municipal government any power that it may see fit to give. Brown v. City of Galveston, 97 Texas, 1; Southwestern Tel. & Tel. Co. v. Dallas, 134 S. W., 321.

But it is claimed that the recall provision of the city of Dallas is a violation of article 4, section 4, of the Constitution of the United States, which we here copy: "The United States shall guarantee to every State in this Union a Republican form of government."

Counsel for the defendants in error have made an exhaustive research for authorities upon this question, and by the citations in their admirable brief have made the examination of the question comparatively easy.

As to the meaning of the phrase: "Republican form of government," there is no better authority than Mr. Jefferson, who, in discussing the matter, said: "Indeed, it must be acknowledged that the term republic is · of very vague application in every language. Were I to assign to this term a precise and definite idea, I would say, purely and simply, it means a government by its citizens in mass, acting directly and not personally, according to rules established by the majority; and that every other government is more or less republican in proportion as it has in its composition more or less of this ingredient of the direct action of the citizens." . . .

"On this view of the import of the term republic, instead of saying, as has been said, that it may mean anything or nothing, we may say with truth and meaning, that governments are more or less republican as they have more or less of the element of popular election and control in their composition; and believing, as I do, that the mass of the citizens is the safest depository of their own rights and especially that the evils flowing from the duperies of the people are less injurious than those from the egotism of their agents, I am a friend to that composition of government which has in it the most of this ingredient."

We could quote and cite any number of authorities, using the brief of the learned counsel for the defendants in error, but we deem it unnecessary to multiply them, and will proceed to examine the provisions of the charter with a view of determining if it fulfills the definition given by Mr. Jefferson; and, if it does, it is not obnoxious to the provisions of the Federal Constitution as above quoted.

In the charter of the city of Dallas all of the powers of government; that is, the sovereignty of the municipality, are vested in the people, which powers are exercised by representatives of the people; that is, officers elected by the voters. The charter of the city of Dallas vests the power of government in the people by these words:

"Section 1. Corporate Name. All inhabitants of the city of Dallas, Dallas County, Texas, as the boundaries and limits of said city

are herein established or may be hereafter established, shall be a body politic, incorporated under, and to be known by, the name and style of the 'City of Dallas,' with such powers, rights and duties as herein provided."

It will be observed that the people who reside within the described limits of the city of Dallas constitute the city and to them is entrusted the powers of government. The sovereignty of the municipal government, its powers by which its affairs are conducted, are vested in the masses of the people, just as is required to constitute a republican form of government, and the other requirements to fulfill the definition are met in the charter by the several provisions for the election of officers named therein. That the city of Dallas is strictly republican in form of government is not questioned if the recall be eliminated. But it is said that with the recall provision, it ceases to be republican. How this can be is not made plain to us. With the recall provision in the charter the people are still invested with the sovereign power of the municipality, and they are entrusted with the selection of their representatives who are to administer the city government. It occurs to us that there is a greater degree of sovereignty with the people with the recall of their representatives than would otherwise be the case; in fact, the right of recall asserts in a larger degree the right of representation; that is, representation in fact of the will and wishes of the voters. This enlargement of the control of the masses does not make the government less republican.

The policy of reserving to the people such power as the recall, the initiative and the referendum is a question for the people themselves in framing the government, or for the Legislature in the creation of municipal governments. It is not for the courts to decide that question. We are unable to see from our viewpoint how it can be that a larger measure of sovereignty committed to the people by this method of government and a more certain means of securing a proper representation in any way militates against its character as a republican form of government and that it is thereby rendered in any sense obnoxious to the provision of the Constitution of the United States.

Article 16, section 30, of the State Constitution, reads: "The duration of all offices not fixed by the Constitution shall never exceed two years," etc. It is claimed that the recall by the citizenship of a city deprives the officer of the benefit of his term of office without due process of law. If the officer had been elected to the office and the law were changed subsequently, there might be some ground for making such an argument, but in this case the law provided for the recall at the time the plaintiff in error was elected to his office and he took it upon the condition that the people might remove him from office and he can not now be heard to say that he had been deprived of his office without due process of law, for, in fact, the proceeding is just what he contracted for when he accepted the office. It seems to be in the mind of some of the counsel that an officer has some kind of secured right to hold an office contrary to the will and wishes of the people he represents, but we are of opinion that he has no more right, as a matter of good morals, to hold such office under such circumstances than any employee or agent has to continue in the

discharge of his duty for which he has been employed when he ceases to give satisfaction, except that under the Constitution and laws as they have heretofore existed in this·State, such an officer could not be removed upon a failure on his part to give satisfaction in the discharge of his duties, but must be guilty of some offense to justify the removal under the constitutional provisions which are in effect in this State. In the creation of the municipal corporation the Legislature was not bound to make the term of office two years, it might have made it to extend to any time not exceeding two years; and we conclude what we have to say in expressing the view again, what we have so frequently stated, that the people of the city of Dallas were invested with the sovereign power of the city by virtue of the grant of the charter to them and ·that the Legislature has the power to grant to them the right to remove by process of the recall provision any officer who failed to discharge his duty in a manner satisfactory to the people of that .city.

Section 7, article 15, of the Constitution, reads: "The Legislature shall provide by law for the trial and removal from office of all officers of this State, the modes for which have not been provided in this Constitution."

It is objected that the removal by recall is violative of that section because it does not provide for a trial of the officer. The section applies only to "officers of the State." In the connection in which it is used the language must be held to refer to the class of officers treated of in that section but omitted therefrom. We are of opinion that "officers of the State" have the same signification as State officer. In article 5, section 24, the removal of all county officers had been provided for, and the language of section 7 of article 15 had the effect to include all State officers not included in that article. The objection is not sound and is overruled.

The facts and questions of law are practically the same in cause No. 2295, Lefevre v. Belsterling, this day decided, and this opinion applies to both cases.

It is ordered that the judgments of the District Court and Court of Civil Appeals in each case be affirmed.

*Affirmed.*

MR. JUSTICE DIBRELL dissenting.

I regret that I am not able to agree.with a majority of the court in their disposition of this case, but on account of the fact that the court is on the eve of adjournment, I will not have time to express my views on the questions involved. I consider the questions presented in this case of great importance, calling for a construction of more than one provision of the Constitution of this State and affecting the form of our government.

I will reduce to writing my views for this dissent and file later on.

[The contemplated opinion presenting Mr. Justice Dibrell's views was not filed by him.]