David Patrick GALLAGHER, Appellant,

v.

The STATE of Texas, Appellee.

No. 59677.

Court of Criminal Appeals of Texas, En Banc.

May 29, 1985.

James C. Henry, John Ledger, Peter E. Ryba, Houston, for appellant.

Carol S. Vance, Former Dist. Atty., and W. Scott Carpenter and Ray Howard, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for official oppression, a Class A misdemeanor, V.T.C.A., Penal Code, § 39.02. The jury assessed punishment at 180 days in the county jail and at a fine of $1,000.00.

On appeal we are confronted with appellant's initial ground of error that the County Criminal Court at Law No. 1 of Harris County, where the conviction occurred, did not have jurisdiction over the offense charged. He argues that by virtue of Article V, § 8 of the Texas Constitution and Article 4.05, V.A.C.C.P., the district court has exclusive jurisdiction over all misdemeanors involving "official misconduct," and that the offense of official oppression is "official misconduct" as that phrase or term is used in the State Constitution.

There was no plea to the jurisdiction, and the issue is raised for the first time on appeal. However, the question of the jurisdiction of the convicting court may be raised at any time. See *Bass v. State*, 427 S.W.2d 624, 626 (Tex.Cr.App.1968); *Ex parte Vasquez*, 122 Tex.Cr.R. 475, 56 S.W.2d 190 (1933); *Bragg v. State*, 109 Tex.Cr.R. 632, 6 S.W.2d 365 (1928); *Parr v. State*, 108 Tex.Cr.R. 551, 1 S.W.2d 892

(1928); *Woodard v. State,* 86 Tex.Cr.R. 632, 218 S.W. 760 (1920).[1]

The State counters with the contention that in the current 1974 Penal Code the Legislature created separate offenses by enacting § 39.01 (Official Misconduct)[2] and § 39.02 (Official Oppression),[3] and made clear the distinction between two types of legal duties implicitly recognized by prior law.[4] The State agrees the Legislature intended to make "official misconduct" mean a breach of the legal duties a public servant owes to the citizenry at large and intended "official oppression" to mean violation of the rights of an individual citizen by a public servant. The State urges the conduct here in issue falls within the latter category and such case is not within the exclusive jurisdiction of the district court.

The information, in pertinent part, alleged that on or about July 6, 1977, the appellant

"... while a public servant acting under the color of his office and employment intentionally subjected D_____ S_____ to mistreatment, arrest, detention, and search that the Defendant knew at the time was unlawful...."

The facts show that on July 5, 1977, about 11:30 p.m., the appellant Gallagher, a reserve deputy constable of Precinct No. 3 of Harris County, was serving civil papers. He drove his motor vehicle past a county park where teenagers were shooting fireworks at passing cars. As the appellant entered the park adjacent to a library where the disturbance was occurring, all the vehicles there left except a van parked between two baseball fields.

Appellant decided to investigate the van. He took the license number and then shined a light into the back of the van where he observed a nude young couple engaged in oral sodomy. He stated he was a Harris County officer and ordered the couple out of the van. They dressed and came out. He told them he was Officer

1. Judicial action without jurisdiction is void. *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063 (1926). Judgment which court is without jurisdiction to render is void. *Glenn v. Dallas County Bois D'Arc Island Levee Dist.,* 282 S.W. 339 (Tex.Civ.App.1926).

2. V.T.C.A., Penal Code, § 39.01 (Official Misconduct), provides:

"(a) A public servant commits an offense if, with intent to obtain a benefit for himself or to harm another, he intentionally or knowingly:

"(1) commits an act relating to his office or employment that constitutes an unauthorized exercise of his official power;

"(2) commits an act under color of his office or employment that exceeds his official power;

"(3) refrains from performing a duty that is imposed on him by law or that is clearly inherent in the nature of his office or employment;

"(4) violates a law relating to his office or employment; or

"(5) takes or misapplies any thing of value belonging to the government that may have come into his custody or possession by virtue of his employment, or secretes it with intent to take or misapply it, or pays or delivers it to any person knowing that such person is not entitled to receive it.

"(b) For purposes of Subsection (a)(2) of this section, a public servant commits an act under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity.

"(c) An offense under Subsections (a)(1) through (a)(4) of this section is a Class A misdemeanor. An offense under Subsection (a)(5) of this section is a felony of the third degree."

3. V.T.C.A., Penal Code, § 39.02 (Official Oppression), provides:

"(a) A public servant acting under color of his office or employment commits an offense if he:

"(1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful; or

"(2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful.

"(b) For purposes of this section, a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity.

"(c) An offense under this section is a Class A misdemeanor."

4. See also § 39.03 (Misuse of Official Information) and § 39.04 (Public Disclosure by Public Servant) (Acts 1975, 64th Leg., p. 1361, ch. 518, § 1).

"Johnson." Steven T_____ had no identification save a bank deposit slip without name. Appellant questioned D_____ S_____, the complaining witness, about her home address and telephone number, place of employment, the exact Joske store where she worked, her hours of employment, etc. Appellant declared he could have arrested them, but that he would release the 21-year-old D_____ S_____ and her companion.

The next morning appellant went to the Joske store where D_____ S_____ was employed in the photographic studio. He told her he could not let the matter "slide," but had to fill out a report and insisted she come immediately to his car outside for such purpose. Once in the appellant's car he told her he was going to have to take her downtown for an examination by a female police officer and thereafter her parents would be required to pick her up. She requested to take her own car, but her request was denied. Appellant drove to the third level of a parking garage and copied the license number of D_____ S_____'s car. They drove to the second level of the garage into a far corner where the sun was shining. He informed D_____ S_____ that he could alleviate the trip downtown and the call to her parents if he was permitted to conduct the examination. Appellant demanded that D_____ S_____ pull her underwear down to her ankles and spread her legs. Crying, she did so, and was told to pull herself apart which she also did. Appellant then required D_____ S_____ to expose her breasts to him.

Appellant then drove D_____ S_____ to the front of the store, let her out, and told her his fee for getting the matter quashed was a steak dinner and three beers, and

that if he didn't call within an hour "everything was taken care of...." He never called.

After returning to her post, D_____ S_____ began to cry and reported the incident to her boss. The store's security officers were notified. That very night a female security officer of the store and a reserve deputy constable parked in a van in the same park acting as decoys. The appellant approached their van, and ordered them out. Appellant was arrested, placed in a lineup and identified by D_____ S_____ and her male companion of the previous evening.

G.B. Scott, Chief Deputy Constable for Precinct No. 3, testified that appellant had served as a reserve deputy constable for Precinct No. 3. Scott testified that on the date of the offense, July 6, 1977, appellant was "working under supervision" serving warrants.[5]

Appellant testified he had been a reserve deputy constable for Precinct No. 3 for 10 years and had undergone training for the position. He related he was serving warrants on the night of July 5, and on July 6 when he went to the complainant's place of employment. He admitted he identified himself to the complaining witness as a "Harris County officer" and showed her a badge.

The question presented is one of constitutional, not statutory, interpretation for it is the meaning of "official misconduct" in Article V, § 8 of our state Constitution that controls.

Article V, § 8, Tex.Const., as adopted in 1876, provided in part:

"Sec. 8. The District Court shall have original jurisdiction in all criminal cases

---

**5.** Article 6869.1, V.A.C.S., allows the Commissioners Court of any county to authorize a constable to appoint reserve deputy constables. Article 6869.1 § 1(f) provides in part:

"... reserve deputy constables, while on active duty at the call of the constable and while actively engaged in their assigned duties, shall be vested with the same rights, privileges, obligations and duties of any other peace officer of the State of Texas."

See also Article 4413(29aa), V.A.C.S., and *Texas Board of Private Investigators and Private Security Agencies v. Bexar County Sheriff's Reserve,* 589 S.W.2d 139 (Tex.Civ.App.—San Antonio 1979). The position of a reserve deputy constable clearly falls under the definition of "public servant" as set forth in V.T.C.A., Penal Code, § 1.07(a)(30).

of the grade of felony; in all suits in behalf of the State to recover penalties, forfeitures and escheats; of all cases of divorce; *of all misdemeanors involving official misconduct;...."* (Emphasis supplied.)

This language has remained unchanged in the amendments of 1891 and 1973.

Article 4.05, V.A.C.C.P. (Jurisdiction of District Courts), provides:

"District courts and criminal district courts shall have original jurisdiction in criminal cases of the grade of felony, *and of all misdemeanors involving official misconduct."*

Article 4.05, supra, as well as its forerunners, is and was the legislative restatement of the constitutional command. In order to determine the meaning of "official misconduct," we must examine the derivation of the district court's jurisdiction.

The Constitution of 1845, the first charter drafted by Texas in the course of attaining statehood, made the district court a court of general jurisdiction, with "original jurisdiction of all criminal cases...." Article IV, § 10, Texas Constitution of 1845. This general grant of criminal jurisdiction was retained in the constitutions of 1861 (Article IV, § 10), 1866 (Article IV, § 6) and 1869 (Article V, § 7).

During the Constitutional Convention of 1875, the majority of the Judiciary Committee submitted a proposed judiciary article continuing the original jurisdiction of the district court in all criminal cases. County courts were also to be established, each with jurisdiction over criminal misdemeanors. *Journal of the Constitutional Convention of 1875* (The "News" Office, Galveston, Texas), p. 408. In a minority report, however, great concern was voiced regarding the overcrowding of the dockets of the district courts with many "petty cases." Indeed, this was alleged to be one of the main concerns of the people of Texas in calling for a new Constitution. Id., at 413–414. The report noted that under the majority's proposal, the district courts would have concurrent jurisdiction with the county courts in misdemeanor cases and

that very few cases would be transferred to the county courts. Id., 414.

The minority members proposed to limit the original criminal jurisdiction of the district courts to "criminal cases in the grade of felony" and "cases of misdemeanor involving official misconduct," as well as gambling cases and banking and insurance law violations. The gambling, banking and insurance provisions were deleted in the final form of Article V, § 8, but the minority's proposal otherwise prevailed. The generally accepted reason for the adoption of the minority's viewpoint was, "The Convention ... apparently felt that numerous petty cases in the district courts were causing unjust and unnecessary delay in trying more important cases." 1 G. Braden, *The Constitution of the State of Texas: An Annotated and Comparative Analysis* (1977), p. 411.

It thus appears that the framers of our 1876 Constitution intended to relieve the district courts of the burden of handling all but the most important class of misdemeanors, which class in their opinion consisted of "official misconduct" offenses. We cannot say, and the proceedings of the Constitutional Convention do not suggest, that it was intended that distinctions be made as to the type of official misdeed or the type of officer involved, in determining whether the case should be heard in the district court or not.

■ Turning to the rules of constitutional construction, it is observed that constitutional provisions which are not ambiguous and are not open to more than one construction or interpretation must be given their full effect without regard to the consequences. *Cramer v. Sheppard,* 140 Tex. 271, 167 S.W.2d 147 (1942); *Rawlins v. Drake,* 291 S.W.2d 349 (Tex.Civ.App.— Dallas 1956); *Bexar County Hospital District v. Crosby,* 320 S.W.2d 247, 253 (Tex. Civ.App.—San Antonio 1958); *Keller v. State,* 87 S.W. 669 (Tex.Cr.App.1905); *Koy v. Schneider,* 110 Tex. 369, 218 S.W. 479, 221 S.W. 880 (1920). And constitutional provisions will not be construed to be am-

biguous and contradictory if such construction is avoidable. *Holman v. Broadway Improvement Co.*, 300 S.W. 15 (Tex.Com. App.1927). And when the significance of a phrase or clause is plainly discoverable from the words thereof, there is no reason to resort to rules of construction and effect should be given to the meaning thus ascertained. Words will be considered to have been used in their natural sense and ordinary significance unless the context indicates the contrary. 12 Tex.Jur.2d, Constitutional Law, § 14, pp. 362–363. The language used must be presumed to have been carefully selected and the words used are to be understood as people generally understood them at the time of the adoption of the Constitution. *Cramer v. Sheppard*, 140 Tex. 271, 167 S.W.2d 147 (1942); *City of Amarillo v. Love*, 356 S.W.2d 325 (Tex.Civ.App.—Amarillo 1962), err. ref. n.r.e.; *Leander Ind. Sch. Dist. v. Cedar Park Water Sup. Corp.*, 479 S.W.2d 908 (Tex.1972). See *Markowsky et al. v. Newman et al.*, 134 Tex. 440, 136 S.W.2d 808 (1940). And if a term appears to have received a judicial construction prior to its use in a constitutional provision, the inference is that it bears this signification. 12 Tex.Jur.2d, Constitutional Law, § 14, p. 363; *Carr v. Tucker*, 42 Tex. 330 (1875).

With this background we observe that while "official misconduct" is not defined in the Constitution, the term also was used in Article XV, § 6, dealing with the removal of district judges.

Said § 6 provides in part:

"Sec. 6 Any judge of the District Courts of the State who is incompetent to discharge the duties of his office, or *who shall be guilty of partiality, or oppression, or other official misconduct ...*" (Emphasis supplied.)

■ Said § 6 being a part of the 1876 Constitution, it is clear that the framers thereof intended that oppression was to be considered official misconduct. Said § 6 has not been amended.

As earlier noted, Article V, § 8 of the State Constitution was amended in 1891 and 1973, but retained the same language as the 1876 version with regard to the district court's jurisdiction over all misdemeanors involving official misconduct. We thus turn to authorities and decided cases to aid us in our quest.

Ballentine's Law Dictionary, 3rd Ed. (1969), defines "official misconduct" as "An act constituting a breach of the good faith and right action impliedly required of all public officers. *Etzler v. Brown*, 58 Fla. 221, 50 So. 416. Any act involving moral turpitude, or any act which is contrary to justice, honesty, principle, or good morales, if performed by virtue of authority of office. *State v. Examining & Trial Board*, 43 Mont. 389, 117 P. 77. Any unlawful behavior in relation to the duties of his office, willful in its character, of any officer entrusted in any manner with the administration of justice, or the execution of the laws. *Brackenridge v. State*, 27 Tex. App. 513, 11 S.W. 630."

*Brackenridge* (Ct. of Appeals, 1889) cited in Ballentine's involved the demanding of illegal fees by a county judge which was there held to be "official misconduct."

*Bolton v. State*, 69 Tex.Cr.R. 582, 154 S.W. 1197 (1913), involved an indictment charging the tax assessor of Dallas County with failing to make a report of fees as required by law. There this Court held that such failure was "official misconduct" within the meaning of Article V, § 8, State Constitution, and Article 89, C.C.P., 1895 (forerunner of Article 4.05, V.A.C.C.P., 1965), and that the district court has exclusive jurisdiction over the said misdemeanor offense, and erred in transferring the case to county court.

*Simpson v. State*, 138 Tex.Cr.R. 622, 137 S.W.2d 1035 (1940), involved the offense of "using violent means to induce a confession." Article 1157, Penal Code (1925). The district court transferred the case to county court. This Court set aside the conviction finding the actions of a police officer in beating a prisoner in order to obtain a confession involved "official misconduct" and the county court did not have jurisdiction over the offense.

In *Robinson v. State,* 470 S.W.2d 697 (Tex.Cr.App.1971), it was held that the actions of a warrant officer of a municipal corporation in converting money which had come into his possession by virtue of an oral agreement to pay such money to an agent of the city as payment of fines were sufficient to constitute "official misconduct" so as to confer jurisdiction upon the district court.

There this Court quoted with approval the definition of "official misconduct" from Article 5973, V.A.C.S.

"Official misconduct" is defined by statute as "any unlawful behavior in relation to duties of office that is wilful in character, including wilful or corrupt failure, refusal or neglect of an officer to perform any duty enjoined on him by law."

In *Emerson v. State,* 662 S.W.2d 92 (Tex. App.—Houston [1st] 1983) the defendant was tried for the offense of official oppression (V.T.C.A., Penal Code, § 39.02) in district court. The indictment alleged, in effect, that the defendant, while acting as a Houston police officer, unlawfully detained the female complainant "in order to pressure and persuade her to engage in sexual intercourse with him." On appeal after conviction he asserted the acts of official oppression did not involve official misconduct and the district court was without jurisdiction to try the misdemeanor involved as its jurisdiction was limited to that conduct defined as an offense (official misconduct) under V.T.C.A., Penal Code, § 39.-01. The court's opinion set out the State's response:

"In response to this argument the State points out that if the appellant's contentions are accepted, some misdemeanor offenses involving official wrongdoing would have to be tried in the district court because of the label attached to sec. 39.01, while others involving more serious consequences, listed under the heading of sec. 39.02, would have to be tried in the county court. The State argues that an offense may involve official misconduct, regardless of the title of the section under which the offense is listed, and that the purpose for vesting original jurisdiction in the district courts in all misdemeanors involving official misconduct was to equate such offenses with felonies in regard to the seriousness of the offense." [6]

The court adopted the reasoning advanced by the State, and noted that §§ 39.01 and 39.02 of the Penal Code were derived, in part, from Article 1157, V.A. P.C., 1925, and that this Court had previously held the district court had original and exclusive jurisdiction over all cases brought under the provisions of Article 1157. See *Simpson v. State,* 138 Tex.Cr.R. 622, 137 S.W.2d 1035 (1940).

The Court of Appeals held that the official oppression charged against the defendant was within the ambit of the phrase "official misconduct" as that term is used in the State Constitution (Article V, § 8), and Article 4.05, V.A.C.C.P., and the district court had jurisdiction over the proceeding. See also *Zuniga v. State,* 664 S.W.2d 366 (Tex.App.—Corpus Christi 1983).

While the Legislature has the constitutional right to define criminal offenses and fix penalties, Article III, § 1, Tex.Const., and has the right to change the jurisdiction of county courts and conform the jurisdiction of other courts to such change, Article V, § 22, Tex.Const., and Article V, § 16, Tex.Const., provides county courts shall have original jurisdiction of all misdemeanors of which exclusive original jurisdiction is not given to justice court, neither the Legislature nor the courts can impair the jurisdiction given district courts in Article V, § 8, Tex.Const., over misdemeanors involving official misconduct. *Hatch v. State,* 10 Tex.Cr.R. 515 (1881); *Mitchell v. Cornwall,* 314 S.W.2d 437 (Tex.Civ.App. 1958). See also *Simpson v. State,* supra.

---

**6.** Interestingly enough the State's position in *Emerson* is at odds with the State's position in the instant case.

■ Where jurisdiction is given by the Constitution over cases involving designated kinds of subject matters, the grant is exclusive, unless a contrary intent is shown by the context. *Meyers v. State*, 105 S.W. 48 (Tex.Civ.App.1907). Further, it has been stated that the jurisdiction of the district court is fixed by the state Constitution and is immutable except by constitutional method of amendment. *Moritz v. Byerly*, 185 S.W.2d 589 (Tex.Civ.App.1945) (error ref.).

As noted earlier, the State argues there is a distinction between "official misconduct" defined by V.T.C.A., Penal Code, § 39.01, and "official oppression" defined in V.T.C.A., Penal Code, § 39.01. The State says the former is concerned with conduct in violation of duties an official owes to the public in general, and the latter is concerned with the violation of rights possessed by each individual citizen. The State thus contends that as a result the conduct charged in the information in the instant case was not "official misconduct." It is true that prior law did not contain a provision penalizing official oppression. The former Penal Code did, however, include statutes prohibiting certain oppressive activities, most relating to law enforcement and most involving official misconduct. See Practice Commentary, V.T.C.A., Penal Code, § 39.02.

In *Emerson* the Court of Appeals wrote:

"The appellant in the case at bar was convicted of an offense which is no less official misconduct than any conduct chargeable under sec. 39.01, and, as we have stated, the same conduct condemned by art. 1157 is now made punishable under sec. 39.02. Thus, there is no logical basis for making any jurisdictional distinction between the types of offenses listed under sec. 39.01 and those listed under sec. 39.02.

"In *Popham v. State,* 154 Tex.Cr.R. 529, 228 S.W.2d 857, 858 (1950), the court stated:

"The name of a Title is merely a convenience for the purpose of classifying a number of offenses which the codifiers selected. *It has no force and effect whatsoever to exclude from that classification any offense other than those placed within it.*" (Emphasis added.)

Furthermore, the Code Construction Act expressly provides that title captions do not limit or expand the meaning of any statute. TEX.REV.CIV.STAT.ANN. art. 5429b–2, sec. 3.04 (Vernon Supp.1982)."

■ Further, it must be remembered that the constitutional jurisdiction of a district court cannot be taken away by legislative act. *Mitchell v. Cornwall,* supra.

■ We accordingly hold that the offense charged against the appellant is within the ambit of the phrase "official misconduct" as that term is used in Article V, § 8 of the Texas Constitution and Article 4.05, V.A.C.C.P. See *Emerson v. State,* supra. The said County Criminal Court at Law No. 1 was without jurisdiction to try the instant cause. Appellant's initial ground of error is sustained.

The judgment is reversed and the information ordered dismissed.

TEAGUE and MILLER, JJ., not participating.

CLINTON, Judge, dissenting.

In my judgment the majority correctly discerns that "the framers of our 1876 Constitution intended to relieve the district courts of the burden of handling all but the most important class of misdemeanors, which class in their opinion consisted of 'official misconduct' offenses." The best quick way to carry out that intent is to hold, as is the case, that since "a reserve deputy constable" is not an "officer" in the constitutional sense and thus may be removed at will by the constable who hired him, appellant is incapable of engaging in "official misconduct" within the contemplation of relevant constitutional provisions. However, the majority insists that it is unable to say "it was intended that distinctions be made as to the type of official misdeed or type of officer involved, in de-

termining whether the case should be heard in the district court or not." Demonstrably there is abundant evidence that such was precisely the intention of the framers, and I now turn to marshal all that I have found.

Earlier constitutions had provisions for removal of certain officers of government. See generally *Trigg v. State*, 49 Tex. 645 (1878). But from lessons learned during Reconstruction about abuses of power of removal, *Trigg*, supra, and see Interpretive Commentary following Article V, § 9, framers of the Constitution of 1876 determined to restore to designated county officers, including district clerks, protection from arbitrary removal without just cause. Article V, § 9 and § 24.[1] The latter lodged in judges of district courts authority to remove from office for *inter alia* "official misconduct" upon cause being set forth in writing and a jury finding that the alleged cause is true. *Trigg v. State*, supra. It has been held that § 24 does not apply to city officers. *Bonner v. Belsterling*, 104 Tex. 432, 138 S.W. 571, 574, 575 (1911).

The jurisdiction of a district court "in cases of misdemeanors, involving official misconduct" first appeared in Article V, § 8, the Constitution of 1876.[2] See Interpretive Commentary and Historical Note following Article V, § 8.[3] Early on the relationship between Sections 8 and 24 was explained in *Watson v. State*, 9 Tex.App. 212 (Ct.App.1880), in terms of "harmony of the system," in that lodging both the trial of misdemeanors involving official misconduct and the removal of designated county officers on account of official misconduct in district court obviated "resort to some other proceeding in another tribunal," *Watson*, supra, at 216.

Obviously to implement the constitutional provisions concerning official misconduct the Legislature included a host of articles in revised civil statutes of 1879. One mandated automatic removal of any *county officer* convicted for "any misdemeanor involving official misconduct" and directed the judgment of conviction "embody within it an order removing such officer," article 3388; another was article 3393 (now Article 5973, V.A.C.S.), *viz:*

1. From the beginning clerks of district courts were elected for a term of four years, "subject to removal by *presentment of a grand jury, and conviction of petit jury.*" Constitution of The Republic of Texas, art. IV, § 6. The Constitution did not provide for county clerks. Similarly, the Constitution of 1845, art. IV, § 11; Constitution of 1861, art. IV, § 11; Constitution of 1866, art. IV, § 7; however § 18 did provide for election of county clerks, also for four years, "who may be removed for such cause and in such manner, as may be prescribed by law." Abuse came with the Constitution of 1869: art. V, § 9 continued to provide for elected district clerks, but made them "subject to removal *by the judge of said court for cause spread upon the minutes of the court;*" yet under § 24 county clerks and other district officers whose removal was not otherwise provided for "may be removed upon *conviction by a jury, after indictment,* for malfeasance, nonfeasance, or misfeasance in office."

All emphasis is mine unless otherwise indicated.

2. The majority opinion notes that when the same framers came to provide for removal of a district court judge by the Supreme Court in Article XV, § 6, they alluded to his being "guilty of partiality, or oppression, or other official misconduct." The fact remains that the phrase was reserved exclusively as grounds for removal of district judges, see *In re Laughlin*, 153 Tex. 183, 265 S.W.2d 805, 808 (1954) for the only construction of the phrase by the Supreme Court vis a vis a district judge; so far as reasonable research reveals, it is not used with respect to any other officer. Indeed, in Article XV, § 7 initially the Constitution delegated to the Legislature authority to provide for trial and removal of "all officers of this State, the modes for which have not been provided in this Constitution." Manifestly a mode is not provided for trial and removal of a reserve deputy constable, nor has the Legislature because clearly he is not an "officer" and may be summarily removed at the pleasure of the constable.

3. In art. IV, §§ 15 and 16 the Constitution of 1866 authorized establishing a county court in each county court in each county with "jurisdiction of all misdemeanors and petty offenses;" see also Constitution of 1869, § 17. While it may be, as G. Braden found in his work cited by the majority opinion, that the framers of the Constitution of 1876 desired to relegate "numerous petty offenses" to county courts, still consistent with other provisions granting removal power to district judges, see note 1, they also retained in the district court jurisdiction of misdemeanors involving official misconduct—just as it had been before Reconstruction.

"By 'official misconduct,' as used in this title with reference to *county officers*, is meant any unlawful behavior in relation to the duties of his office, willful in its character, of any officer intrusted in any manner with the administration of justice or the execution of the laws [including] any willful and corrupt failure, refusal, or neglect of an officer to perform any duty enjoined on him by law." See *Craig v. State*, 31 Tex.Cr.R. 29, 19 S.W. 504 (1892).

Conformably with the amendment to § 8, article 70 of the 1879 code of criminal procedure added such newly granted jurisdiction of district courts over misdemeanors involving official misconduct. That is retained in Article 4.05, V.A.C.C.P. *Trigg v. State*, supra, had explained how jurisdiction of the district court was "advanced" by § 24. But exactly what the constitutional term in § 8 meant and how it was to be applied soon confronted the courts.

In 1880 the *Watson* court opined that "negligent" misconduct was not enough to warrant prosecution in a district court, reasoning that the Constitution did not intend to "burden the District Court with every possible act or omission of an officer for which the law fixed a penalty," *Watson*, supra, at 216. The next year, however, the court of appeals overruled that notion with a literal reading of § 8. *Hatch v. State*, 10 Tex.Cr.R. 515, 519–560 (Ct.App.1881).

In *Craig v. State*, supra, the Court relied on constitutional and statutory provisions to find that with respect to a county officer " 'official misconduct' grows out of a willful or corrupt failure, refusal, or neglect of the officer to perform a duty enjoined on him by law, or out of some willful or un-

lawful behavior on his part in relation to the duties of his office." Thus, drunkenness in office was found not to be "official misconduct." The Court further held that in order to confer jurisdiction upon a district court to try such a misdemeanor "the cause must be one in which official misconduct is involved, and out of which the prosecution grows; otherwise jurisdiction does not attach in the district court." See also *Brackenridge v. State*, 27 Tex.App. 513, 11 S.W. 630 (Ct.App.1889) and *Bolton v. State*, 69 Tex.Cr.R. 582, 154 S.W. 1197 (1913).

In each case the accused was a county officer. Though the Legislature has from time to time provided different means for removing from office according to categories of office in what is now Title 100, V.A.C.S., in the case of municipal officers for official misconduct only the mayor and aldermen of any town or city incorporated under general laws are singled out. See Articles 5991–5995, V.A.C.S. And so far as may be reasonably ascertained, the Legislature has never included removal of other municipal officers in Title 100 or its predecessors, nor in any other enactment of general application—[4] unless it be deemed a special kind of official misconduct regarded as particularly offensive.[5] "Prior law did not contain a provision penalizing official oppression," but only "ad hoc statutes [proscribed] certain oppressive activities," Practice Commentary following V.T.C.A. Penal Code, § 39.02.

One such type of misconduct was noticed by the Legislature in Acts 1923, p. 269, codified in the 1925 Penal Code as article 1157. Under it "[a]ny sheriff ... city marshal, chief of police, policeman, or any other officer having under arrest or in his

---

**4.** There were, of course, statutes such as Article 1006, V.A.C.S. granting power of removal to city governments.

**5.** Nevertheless in *Robinson v. State*, 470 S.W.2d 697 (Tex.Cr.App.1971) the Court applied that definition of "official misconduct" prescribed by Article 5973, V.A.C.S. to a warrant officer employed by a municipal corporation, namely the City of Houston. However, the authority for its definition, 39 Tex.Jur.2d, Municipal Corporations Sec. 168, p. 518, is miscited. The defini-

tion does appear in Section 181 at p. 574, but the sentence immediately preceding it is: "The mayor or the alderman of a general law city may be removed from office for official misconduct." The only other authority cited is "See Article 5973, V.A.C.S.," which by express terms of Article 5974, V.A.C.S. is made applicable to mayors and aldermen—again, just of a town or city incorporated under the general laws, according to Article 5995, V.A.C.S.

custody any person as a prisoner who shall torture, torment or punish such person" in order to extract a confession committed a misdemeanor penal offense. Also, the statute provided the jury may say in its verdict that defendant should never be allowed to hold any governmental office or profit or trust, and judgment thereon automatically barred the defendant from holding any such office.

In *Simpson v. State*, 138 Tex.Cr.R. 622, 137 S.W.2d 1035 (1940) the Court dealt with a prosecution under that statute of a senior captain of detectives employed by the City of Houston, saying that "if he used force and abuse as testified to by [complainant] to compel him to [confess], there would be no difficulty in recognizing it as 'official misconduct.'" But the true reason the offense is one involving "official misconduct" is that at risk was future employment of defendant by the City of Houston as well as by every other governmental body. When the Court alluded to "far reaching consequences" of conviction for an offense involving "official misconduct," *Simpson,* supra, at 1037, surely it had that stringent employment bar in mind. Without such a statute there was no legislative enactment directly authorizing his removal from office by a district court. Compare Title 100. The predecessor to Article 5968, V.A.C.S., it will be recalled, spoke only to convictions of "any *county* officers ... for any misdemeanor involving official misconduct."

What all these developments mean is that the constitutional language of Article V, § 8, was never intended to afford jurisdiction to a district court over a misdemeanor involving official misconduct allegedly committed by a municipal peace officer. The reasoning advanced by the State and adopted by the Houston (1st) Court of Appeals in *Emerson v. State*, 662 S.W.2d 92 (Tex.App.—Houston [1st] 1983), therefore, erroneous. The purpose for vesting original jurisdiction in district courts of all misdemeanors involving official misconduct was *not* "to equate such offenses with felonies in regard to the *seriousness of the offense.*" Rather, jurisdiction was granted district courts because the *consequence of*

*conviction* was removal from office—regardless of how "serious" the offense was deemed to be. The intention of the framers was, as explained early on, to protect certain designated officeholders against arbitrary removal without cause, and it was thought a jury trial in district court presided over by a district judge would best provide that protection.

Likewise, article 70 in the 1879 code of criminal procedure (now Article 4.05, V.A. C.C.P.), being but a contemporaneous legislative expression of the constitutional amendment, does not have broader or different import.

Therefore, in order for us to find jurisdiction in the district court to try appellant for "official oppression" as alleged, the source must be other than Article V, § 8 and Article 4.05, and there is none.

Because the majority flouts the very intent it finds the framers had in mind, I dissent.

McCORMICK, J., joins.