**Phillip EMERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 033–84.**

Court of Criminal Appeals of Texas, En Banc.

March 4, 1987.

Allen C. Isbell (on appeal), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Timothy G. Taft and Russell Hardin, Jr., Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted in the 263rd District Court of the misdemeanor offense of "official oppression" under V.T.C.A., Penal Code, § 39.02. The indictment alleged, in effect, that the appellant while acting as a City of Houston police officer, unlawfully detained the female complainant "in order to pressure and persuade her to engage in sexual intercourse with him." The appellant pleaded not guilty. The jury found him guilty and assessed his punishment at one (1) year's confinement in the county jail and at a fine of $2,000.00.

On appeal the appellant did not challenge the sufficiency of the evidence, but in two grounds of error (1) challenged the jurisdiction of the district court to entertain the misdemeanor offense of "official oppression" and (2) urged the court's charge was fatally defective. The Court of Appeals overruled both grounds of error and affirmed the conviction, holding in part that the offense charged was within the ambit of the phrase "official misconduct" as used in the State Constitution (Article V, § 8) and the Code of Criminal Procedure (Article 4.05) and that the district court had jurisdiction of the offense charged. *Emerson v. State*, 662 S.W.2d 92, 94 (Tex.App.-Houston [1st] 1983). This Court granted appellant's petition for discretionary review to determine whether the Court of Appeals was correct in deciding that jurisdiction was properly in the district court.

Only recently in *Gallagher v. State*, 690 S.W.2d 587 (Tex.Cr.App.1985), we decided in effect the same question here presented, quoting with approval excerpts from the Court of Appeals' opinion in the instant case (*Emerson v. State, supra.*) Gallagher, however, was tried in County Criminal Court at Law No. 1 of Harris County for the misdemeanor offense of official oppression, and his appeal was a direct appeal to this Court. Gallagher urged that by virtue of Article V, § 8 of the Texas Constitution and Article 4.05, V.A.C.C.P., the district court has exclusive jurisdiction over all misdemeanors involving "official mis-

conduct," and the offense of official oppression is "official misconduct" as that phrase or term is used in the State Constitution. We agreed and held that the said county court was without jurisdiction to try Gallagher's case. The judgment was reversed and the information ordered dismissed.

For the same reasons stated in *Gallagher* we hold that the district court here had jurisdiction over the misdemeanor offense charged.

The judgment of the Court of Appeals is affirmed.

CLINTON, Judge, dissenting.

This is an appeal from a conviction in a district court for "official oppression," a misdemeanor denounced by V.T.C.A. Penal Code, § 39.02. Appellant challenged the jurisdiction of the district court to try him for this misdemeanor offense. The Houston (1st) Court of Appeals rejected his contention, holding that "the offense charged against the appellant in the instant case is within the ambit of the phrase 'official misconduct' as that term is used in the State Constitution and the Code of Criminal Procedure." *Emerson v. State,* 662 S.W.2d 92, 94 (Tex.App.—Houston [1st] 1983). Following *Gallagher v. State,* 690 S.W.2d 587 (Tex.Cr.App. 1985), the majority finds that a City of Houston police officer is an "official" in the constitutional sense. For reasons about to be stated, I do not agree.[1]

There can be no doubt that the district courts have been constitutionally assigned

jurisdiction of all misdemeanors involving "official misconduct" by Article V, § 8. The problem now is to determine whether conduct proscribed as "official oppression" in § 39.02 is "official misconduct" within the meaning of Article V, § 8, such that a district court has jurisdiction of an offense alleged to have been committed by a peace officer employed by a municipal corporation. From a study of related constitutional and statutory provisions and other aids my conclusion is that the district court lacked jurisdiction in this cause.

Earlier constitutions had provisions for removal of certain officers of government. See generally *Trigg v. State,* 49 Tex. 645 (1878). But from lessons learned during Reconstruction about abuses of power of removal, *Trigg,* supra, and see Interpretive Commentary following Article V, § 9, framers of the Constitution of 1876 determined to restore to designated county officers, including district clerks, protection from arbitrary removal without just cause. Article V, § 9 and § 24.[2] The latter lodged in judges of district courts authority to remove from office for *inter alia* "official misconduct" upon cause being set forth in writing and a jury finding that the alleged cause is true. *Trigg v. State,* supra. It has been held that § 24 does not apply to city officers. *Bonner v. Belsterling,* 104 Tex. 432, 138 S.W. 571, 574, 575 (1911).

The jurisdiction of a district court "in cases of misdemeanors, involving official misconduct" first appeared in Article V, § 8, the Constitution of 1876.[3] See Inter-

1. The same issue was decided by the Corpus Christi Court of Appeals in an unpublished opinion delivered in *Rendon v. State,* 695 S.W.2d 1 (Tex.App.1984); suffice to say its conclusion is contrary to that reached by this Court in *Gallagher v. State,* supra.

2. From the beginning clerks of district courts were elected for a term of four years, "subject to removal by *presentment of a grand jury, and conviction of petit jury.*" Constitution of The Republic of Texas, art. IV, § 6. The Constitution did not provide for county clerks. Similarly, the Constitution of 1845, art. IV, § 11; Constitution of 1861, art. IV, § 11; Constitution of 1866, art. IV, § 7; however § 18 did provide for election of county clerks, also for four years, "who may be removed for such cause and in such manner, as may be prescribed by law."

Abuse came with the Constitution of 1869: art. V, § 9 continued to provide for elected district clerks, but made them "subject to removal *by the judge of said court for cause spread upon the minutes of the court;*" yet under § 24 county clerks and other district officers whose removal was not otherwise provided for "may be removed upon *conviction by a jury, after indictment,* for malfeasance, nonfeasance, or misfeasance in office."

All emphasis is mine unless otherwise indicated.

3. In *Gallagher v. State,* supra, the majority opinion notes that when the same framers came to provide for removal of a district court judge by the Supreme Court in Article XV, § 6, they alluded to his being "guilty of partiality, or

pretive Commentary and Historical Note following Article V, § 8.[4] Early on the relationship between Sections 8 and 24 was explained in *Watson v. State,* 9 Tex.App. 212 (Ct.App.1880), in terms of "harmony of the system," in that lodging both the trial of misdemeanors involving official misconduct and the removal of designated county officers on account of official misconduct in district court obviated "resort to some other proceeding in another tribunal," *Watson,* supra, at 216.

Obviously to implement the constitutional provisions concerning official misconduct the Legislature included a host of articles in revised civil statutes of 1879. One mandated automatic removal of any *county officer* convicted for "any misdemeanor involving official misconduct" and directed the judgment of conviction "embody within it an order removing such officer," article 3388; another was article 3393 (now Article 5973, V.A.C.S.), *viz:*

> "By 'official misconduct,' as used in this title with reference to *county officers,* is meant any unlawful behavior in relation to the duties of his office, willful in its character, of any officer intrusted in any manner with the administration of justice or the execution of the laws [including] any willful and corrupt failure, refusal, or neglect of an officer to perform any duty enjoined on him by law."

See *Craig v. State,* 31 Tex.Cr.R. 29, 19 S.W. 504 (1892).

Conformably with the amendment to § 8, article 70 of the 1879 code of criminal procedure added such newly granted jurisdiction of district courts over misdemeanors involving official misconduct. That is re-

tained in Article 4.05, V.A.C.C.P. *Trigg v. State,* supra, had explained how jurisdiction of the district court was "advanced" by § 24. But exactly what the constitutional term in § 8 meant and how it was to be applied soon confronted the courts.

In 1880 the *Watson* court opined that "negligent" misconduct was not enough to warrant prosecution in a district court, reasoning that the Constitution did not intend to "burden the District Court with every possible act or omission of an officer for which the law fixed a penalty," *Watson,* supra, at 216. The next year, however, the court of appeals overruled that notion with a literal reading of § 8. *Hatch v. State,* 10 Tex.App. 515, 519–560 (Ct.App.1881).

In *Craig v. State,* supra, the Court relied on constitutional and statutory provisions to find that with respect to a county officer " 'official misconduct' grows out of a willful or corrupt failure, refusal, or neglect of the officer to perform a duty enjoined on him by law, or out of some willful or unlawful behavior on his part in relation to the duties of his office." Thus, drunkenness in office was found not to be "official misconduct." The Court further held that in order to confer jurisdiction upon a district court to try such a misdemeanor "the cause must be one in which official misconduct is involved, and out of which the prosecution grows; otherwise jurisdiction does not attach in the district court." See also *Brackenridge v. State,* 27 Tex.App. 513, 11 S.W. 630 (Ct.App.1889) and *Bolton v. State,* 69 Tex.Cr.R. 582, 154 S.W. 1197 (1913).

---

oppression, or other official misconduct." The *fact remains that the phrase was reserved exclusively as grounds for removal of district judges,* see *In re Laughlin,* 153 Tex. 183, 265 S.W.2d 805, 808 (Tex.1954) for the only construction of the phrase by the Supreme Court vis a vis a district judge; so far as reasonable research reveals, it is not used with respect to any other officer. Indeed, in Article XV, § 7 initially the Constitution delegated to the Legislature authority to provide for trial and removal of "all officers of this State, the modes for which have not been provided in this Constitution."

**4.** In art. IV, §§ 15 and 16 the Constitution of 1866 authorized establishing a county court in

each county with "jurisdiction of all misdemeanors and petty offenses;" see also Constitution of 1869, § 17. While it may be, as G. Braden found in his work cited by Presiding Judge Onion in his *Gallagher* opinion, that the framers of the Constitution of 1876 desired to relegate "numerous petty offenses" to county courts, still consistent with other provisions granting removal power to district judges, see note 2, they also retained in the district court jurisdiction of misdemeanors involving official misconduct—just as it had been before Reconstruction.

In each case the accused was a county officer. Though the Legislature has from time to time provided different means for removing from office according to categories of office in what is now Title 100, V.A.C.S., in the case of municipal officers for official misconduct *only* the mayor and aldermen of any town or city incorporated under general laws are singled out. See Articles 5991–5995, V.A.C.S. And so far as may be reasonably ascertained, the Legislature has never included removal of other municipal officers in Title 100 or its predecessors, nor in any other enactment of general application— [5] unless it be deemed a special kind of official misconduct regarded as particularly offensive.[6] "Prior law did not contain a provision penalizing official oppression," but only "ad hoc statutes [proscribing] certain oppressive activities," Practice Commentary following V.T.C.A. Penal Code, § 39.02.

One such type of misconduct was noticed by the Legislature in Acts 1923, p. 269, codified in the 1925 Penal Code as article 1157. Under it "[a]ny sheriff ... city marshal, chief of police, policeman, or any other officer having under arrest or in his custody any person as a prisoner who shall torture, torment or punish such person" in order to extract a confession committed a misdemeanor penal offense. Also, the statute provided the jury may say in its verdict that defendant should never be allowed to hold any governmental office or profit or trust, and judgment thereon automatically barred the defendant from holding any such office.

In *Simpson v. State*, 138 Tex.Cr.R. 622, 137 S.W.2d 1035 (1940) the Court dealt with a prosecution under that statute of a senior captain of detectives employed by the City of Houston, saying that "if he used force and abuse as testified to by [complainant] to compel him to [confess], there would be no difficulty in recognizing it as 'official misconduct.'" But the true reason the offense is one involving "official misconduct" is that at risk was future employment of defendant by the City of Houston as well as by every other governmental body. When the Court alluded to "far reaching consequences" of conviction for an offense involving "official misconduct," *Simpson*, supra, at 1037, surely it had that stringent employment bar in mind. Without such a statute there was no legislative enactment directly authorizing his removal from office by a district court. Compare Title 100. The predecessor to Article 5968, V.A.C.S., it will be recalled, spoke only to convictions of "any *county* officers ... for any misdemeanor involving official misconduct."

What all these developments mean is that the constitutional language of Article V, § 8, was never intended to afford jurisdiction to a district court over a misdemeanor involving official misconduct allegedly committed by a municipal peace officer. The reasoning advanced by the State—adopted by the Houston (1st) Court of Appeals in this cause—is thus erroneous. The purpose for vesting original jurisdiction in district courts of all misdemeanors involving official misconduct was *not* "to equate such offenses with felonies in regard to the *seriousness of the offense*." Rather, jurisdiction was granted district courts because the *consequence of conviction* was removal from office—regardless of how "serious" the offense was deemed to be. The intention of the framers was, as explained early on, to protect certain designated officeholders against arbitrary removal without cause, and it was thought a jury trial in district court presided over by

5. There were, of course, statutes such as Article 1006, V.A.C.S. granting power of removal to city governments.

6. Nevertheless in *Robinson v. State*, 470 S.W.2d 697 (Tex.Cr.App.1971) the Court applied that definition of "official misconduct" prescribed by Article 5973, V.A.C.S. to a warrant officer employed by a municipal corporation, namely the City of Houston. However, the authority for its definition, 39 Tex.Jur.2d, Municipal Corporations Sec. 168, p. 518, is miscited. The definition does appear in Section 181 at p. 574, but the sentence immediately preceding it is: "The mayor or the alderman of a general law city may be removed from office for official misconduct." The only other authority cited is "See Article 5973, V.A.C.S.," which by express terms of Article 5974, V.A.C.S. is made applicable to mayors and aldermen—again, just of a town or city incorporated under the general laws, according to Article 5995, V.A.C.S.

a district judge would best provide that protection.

Likewise, article 70 in the 1879 code of criminal procedure (now Article 4.05, V.A. C.C.P.), being but a contemporaneous legislative expression of the constitutional amendment, does not have broader or different import.

Therefore, in order for us to find jurisdiction in the district court to try appellant for "official oppression" as alleged, the source must be other than Article V, § 8 and Article 4.05, and there is none.

Accordingly, the judgment of the court of appeals should be reversed and the cause remanded to the trial court for it to enter an order transferring the cause to a proper inferior court in accordance with Article 21.26, V.A.C.C.P.

McCORMICK and MILLER, JJ., join.